THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LINWOOD CHATTIC, Defendant-Appellant.

(No. 73-106; )

Third District—August 21, 1974.

Stephen Hurley, of State Appellate Defender's Office, of Ottawa, for appellant.

L. E. Ellison, State's Attorney, of Morrison, for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant, Linwood Chattic, was found guilty of armed robbery in a jury trial in the Circuit Court of Whiteside County. He was sentenced to a term of imprisonment of from 7 to 21 years.

On appeal in this court, defendant challenges the admission into evidence (when offered by the State) of an inculpatory oral statement made by him to police following defendant's arrest. The oral statement was recorded and thereafter transcribed in typewritten form. Chattic refused to sign the written document when it was tendered to him for his review and signature. A police officer who was present when Chattic made the oral statement testified that the written transcription was an accurate reproduction of the oral statement. After its admission in the trial court, an officer read the written transcript to the jury.

Substantial additional evidence linked Chattic to the commission of the crime. Eva Carey testified that on November 13, 1972, while she was baby-sitting at the residence of Edward Williams, two masked men, one Mexican and the other black and wearing a ski mask, entered the house. The black man held a gun on her while the Mexican took Mr. Williams' coin collection from a cabinet and placed the coins in a laundry basket. Lucille Boehm, a neighbor, testified that at the time of the robbery, she saw an automobile with license number SL 5115 parked in

front of her garage. She then saw two men, one of whom was carrying a basket, enter the car and drive away. Williams identified the coins and the clothes basket in court as having been taken from his house. The police officers identified the coin collection, the laundry basket, the ski mask, and other clothing, as items which they had discovered at, and taken from, the residence of defendant Chattic. The automobile bearing license number SL 5115 was parked in front of the Chattic residence at the time of defendant's arrest. The automobile was identified, the items were discovered, and defendant was arrested within an hour following the robbery.

Prior to the trial, the defense filed a motion for discovery which was granted by the court and in which the State was requested to furnish defendant with, among other things, "all written and recorded statements and the substance of any oral statements made by the defendant and a list of witnesses to the making and acknowledgment of the statements" and "5 * * * any information or material within the prosecution's possession or control which tends to negate the guilt of the defendant as to the offense charged * * *." In response to the motion for discovery, the State supplied the defense with a photocopy of the transcribed statement. In answer to paragraph 5 of the motion, the State responded, "none." The original of the transcribed statement contained (added after the statement portion) the following recital:

"I have read the foregoing statement consisting of three pages and the same is true. Dated the 16th day of November, 1972. Signed: refused to sign, Linwood N.M.N. Chattic."

The signatures of the two police officers appeared next to the sentence referred to. The sentence was not part of defendant's statement. The photocopy of the transcript, which the state gave to the defense in response to the motion for discovery, failed to include the sentence referred to, which indicated that Chattic had refused to sign the statement which also contained the signatures of the police officers. At the trial, when the State offered the transcript in evidence, the recital to the effect that defendant refused to sign was excised and removed before admission into evidence of the statement.

Defense counsel stated that he first learned, during the trial, of Chattic's refusal to sign the transcribed statement. Counsel for defendant also said that he was surprised by this revelation and that, had he known prior to trial, the defense strategy would have been substantially different. The recital to which we have referred in this opinion was not placed in evidence in any manner.

The defendant objected at the trial to the transcript and alleged that the State had failed to comply with defendant's discovery motion. It was

asserted that the failure of the State to tender that appendage to the statement which we have set forth, including the notation of the refusal of defendant to sign, in effect caused the State to fail to disclose evidence which would tend to negate the guilt of defendant. Defendant moved to suppress the statement. Following a recess, the court allowed the State to submit in evidence the transcript with the portion indicating Chattic's refusal to sign excised from the transcript. The court also denied defendant's motion to suppress.

Defendant claims that he was denied due process of law because evidence favorable to him was wrongfully concealed by the State and kept from his use and, also, that he was deprived of due process of law because the prosecutor lied when the prosecutor represented to the jury that the transcription had not been altered. We do not believe that these contentions are sound.

■ It is clear that the effect of certain evidence, which is known to the prosecution and not the defense, depends not upon whether such evidence is deliberately or inadvertently undisclosed, but rather (1) whether the State was obliged to disclose it, and, if the State was so obliged, (2) whether the failure to disclose was material to guilt or innocence or prejudicial to the defendant. (See *Brady v. Maryland,* 373 U.S. 83, 87, 10 L.Ed.2d 215, 83 S.Ct. 1194.) *People v. Dixon,* 19 Ill.App.3d 683, 312 N.E.2d 390, which was cited by defendant, is distinguishable from the present case principally for the reason that there was a complete failure in the Dixon case to deliver a statement or the name and address of a certain witness to the defendant. The statement in that case was clearly favorable to the defendant, since the statement of one Wendell Robinson gave a version of the incident which differed in several important details from the testimony of the key witness for the State.

■■ In the instant case, the notation which was placed at the end of the statement by a police officer, to the effect that Chattic had refused to sign the statement, was not part of Chattic's statement itself, and accordingly was not embraced within the material described by Chattic's discovery motion. The motion requested either verbatim or in substance all statements made by Chattic. The fact that the officer's notation appeared on the transcript might have been material for the purpose of impeaching those officers if they had testified that Chattic signed the transcript. They did not so testify. On the basis of the record before us, the failure of the prosecution, in response to the discovery motion, to disclose the fact of the officer's notation did not justify the relief of suppression or the sanctions requested by defendant. It is noted in the record that the State's Attorney stated that this appendage and notation with respect to the failure of Chattic to sign came to the attention of the prosecution for

the first time when defendant learned of it. This would not be an excuse if, in fact, the notation was part of the statement but, as we have noted, it was not part of the statement but simply a notation made by he officer to indicate that the statement was not signed. Any such collateral notation could not have been qualified as part of the statement if offered by the prosecution. It is true that defendant had stated to his attorney that he signed something and that the attorney may have interpreted that to mean that he signed the statement. Following the presentation of the statement, however, the court had adjourned overnight and defense counsel had an opportunity then to assess the impact or value of the notation and to adapt his trial strategy to the situation as it then existed. It is not clear what change in strategy could have conceivably helped defendant in this cause, in view of the record in this case, by virtue of the simple circumstance that defense counsel would have known prior to trial that Chattic had refused to sign the statement.

■■ The fact that Chattic refused to sign the transcript is distinguishable from the fact that the officer noted that he had refused to sign it. Presumably, this fact was known to defendant himself since he could have known that he did not sign the statement and could not have been prejudiced by the State's failure to disclose a fact which was known to defendant himself. (See *People v. Milligan,* 107 Ill.App.2d 58, 245 N.E.2d 551, 555; *People v. Dixon,* 19 Ill.App.3d 683, 312 N.E.2d 390; *People v. Raymond,* 42 Ill.2d 564, 248 N.E.2d 662, 665; *People v. Richards,* 120 Ill.App.2d 313, 256 N.E.2d 475, 495-496.) It is also notable that the defendant and defendant's counsel could readily see from the statement submitted that there was no signature or indication that it had been signed by anyone. The trial court, in accordance with Rule 415 of Illinois Supreme Court was empowered to refuse to suppress the statement and to proceed as the trial court did. We find no reversible error in the ruling of the trial court in this respect.

Defendant likewise contends that the prosecutor had lied or misrepresented when he stated to the jury that defendant's statement had not been altered. Defendant's entire statement consisted of questions and answers in response to the questions. There was no evidence whatsoever of record to indicate that the written transcript which was submitted to the jury was other than a true and accurate transcription of the questions and answers. As we have herefore observed, neither the refusal of defendant to sign the transcript nor the fact that police officers had noted at the end of the transcript that defendant had refused to sign, was a part of the statement itself. Certainly, the prosecutor was not misrepresenting when he stated that the statement itself which was admitted into evidence had not been altered.

■■ There was no contention that the transcript itself was altered or improperly obtained from defendant. It was not contended that the statement was involuntary or coerced in any manner. So far as the record is concerned, the statement was voluntary and was given after proper warnings had been given to defendant before the statement was taken. The absence of defendant's signature on the transcript of the statement did not render it inadmissible (*People v. McNeil*, 99 Ill.App.2d 273, 240 N.E.2d 721).

■■ As we have noted, we do not believe there is reversible error in this cause arising from the response of the State's Attorney to the motion for discovery or to the introduction of the statement in evidence. The only aspect of the case remaining to be considered, is noted from the circumstance that on cross-examination, defense counsel was prevented, by rulings by the trial court, from bringing out the fact that defendant refused to sign the statement. Objections were sustained and the court cautioned defense attorney not to ask any further questions before the jury which might reveal that the statement had contained the additional recital. In this action, the trial court was in error. Defendant should have been permitted to elicit the fact that defendant had refused to sign the statement.

We note that defense counsel did, however, argue to the jury that there was no signature of defendant on the statement. While we would normally be inclined to remand a cause in which the defendant had been prevented from establishing the fact that defendant had refused to sign a statement, we believe that the jury in this case was aware of such fact as a result of argument in the cause. Our principal reason, however, for affirming this cause, despite the ruling of the trial court referred to, is based on the record which clearly shows that evidence established the guilt of defendant, and the introduction of the statement was, as the prosecution expresses it, simply "icing" on the cake. For the reasons stated, the judgment of the Circuit Court of Whiteside County is affirmed.

Affirmed.

SCOTT, P. J., and DIXON, J., concur.