The People of the State of Illinois, Plaintiff-Appellee, *v.* Richard Long, Defendant-Appellant.

(No. 11510;

Fourth District—June 27, 1973.

*Rehearing denied August 1, 1973.*

John F. McNichols, of Defender Project, of Springfield, (J. Daniel Stewart, of counsel,) for appellant.

Richard A. Hollis, State's Attorney, of Springfield, (Bruce D. Locher, Assistant State's Attorney, of counsel,) for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

The defendant was found guilty in a jury trial of the offenses of armed robbery, aggravated assault and assault, and judgments of guilty were entered upon the verdicts. A single sentence of not less than 4 nor more than 14 years in the Illinois State Penitentiary was imposed. The defendant and one David Schleyhahn were charged with the instant offenses in connection with an armed robbery of a grocery store in Springfield, Illinois in January of 1970. Schleyhahn entered a plea of guilty to the offense of armed robbery and was given a sentence of not less than 2 nor more than 10 years.

A consideration of the various issues assigned as error by the defendant upon this appeal makes necessary a recitation of the facts and circumstances as established by the evidence in this case.

On January 16, 1970, at approximately 9:00 P.M., two men wearing dark ski masks and carrying handguns entered a Kroger store on Second Street near South Grand in Springfield, Illinois. One man remained at the door of the store. He wore a gold jacket, black shoes, and a dark ski mask and was the taller of the two, described in the police report as being 6 foot 2 inches tall and 210 lbs. The shorter man, wearing a green plaid jacket, brown trousers and brown boots, and described in the police report as being 5 foot 11 inches and heavy build, jumped over the "speedy" checkout lane into the manager's office. There he ordered the manager (Lewis Clark), the co-manager (Chris Geals), and a cashier (Mary Jane Bretz), to leave the office. He then filled a brown paper grocery bag with about $9200 in cash, then left the office and went out the front door of the store. After two shots were fired outside, the taller man also left the store.

A meat cutter working in the store at the time of the robbery saw the transaction described above and called the police. It was estimated

that the two men were in the store for five minutes. A description of both men and the gun held by the taller man guarding the door was given to the police by several people. The money taken had been initialed by one of the clerks with the letters "M.B.".

Margarete Chapman, a Kroger employee, saw a man running north across the parking lot as she returned to work at 9:00 P.M. Two people in a passing car—Tom Burk and Nancy McNear—also saw a man run north from the store and at Third and Allen they saw two men get into a car driven by a third person. The couple then drove past the car, described as a maroon Lincoln Continental with license number TP 2930, and saw one man take off his ski mask. They watched the car pass them and then proceed north on Fourth Street, and then returned to the Kroger store to give the information to the store manager and were able to give it directly to police who had then arrived. The police transmitted by radio the accumulated descriptions of the suspects and automobile, and officer Williamson saw a car fitting the description with the reported license number near a house at 740 Yates in Springfield at about 9:35 P.M. The defendant and David Schleyhahn came out of the house and walked toward the car. The defendant was dressed in clothing similar to the description of one of the robbers given to the police. The police arrested the two men and searched them and the car. Schleyhahn had a dark ski mask, a .38 calibre revolver, a brown paper sack, and $78 cash on his person when arrested. Another ski mask was found in the car. No weapon was found on the defendant Long and an unspecified amount of money taken from him was later commingled with the money in a brown paper sack taken from Schleyhahn which totaled $5235. A search of the house at 740 Yates revealed only a $50 bond.

All of the clothing worn by the defendant and Schleyhahn, as well as Schleyhahn's gun, was held as evidence by the police, and at the trial several store employees identified Schleyhahn's gold jacket when it was introduced into evidence against defendant Long and said the defendant's green plaid CPO jacket was similar to that worn by the shorter of the two robbers. The money recovered by the police was identified by the store employee as the money she had initialed "M.B." and taken during the robbery.

The defendant called several witnesses to establish an alibi. Bonnie Foster testified that she met Tony Mattera (since deceased) and the defendant at 7:30 P.M. on January 16, 1970 while they were playing pool at a tavern. After the game, all three of them went to the house at 740 Yates where the witness Patricia Smiley lived. Miss Foster and Mrs. Smiley estimate their arrival as about 8:30 or 8:40 P.M., and both testified that they all drank coffee, watched television, and talked until

about 9:15 when Mattera and Miss Foster left, leaving the defendant behind with Mrs. Smiley. Mrs. Smiley said that shortly after Mattera and Miss Foster left, David Schleyhahn drove to the house at about 9:20 P.M. Mrs. Smiley testified that it seemed Schleyhahn was nervous, that he and Long talked for about 20 minutes in her kitchen, and she overheard Schleyhahn say he had something for Long which she believed to be money, and that she previously knew that Schleyhahn owed money to the defendant. When the two men left her house, they were immediately arrested according to Mrs. Smiley.

The state witness, officer Estill, testified that when he questioned the witness Smiley between 9:30 and 9:45 P.M. on the day in question, she told them the two men had been at her house only about 30 minutes and that she knew defendant Long but not Schleyhahn.

The defendant, at 5 foot 7 inches and 155 lbs., at 28 years of age, does not precisely match the police description of the shorter robber as being 20 to 25 years old, 5 foot 11 inches, and heavy build, but at the trial, three store employees said the shorter robber was 5 foot, 7, 8 or 9 inches tall, and indicated they gave the same description to the police as given on the witness stand rather than what the police report contained.

Defendant's counsel at the beginning of its case told the jury that if Schleyhahn were a witness, he would say the defendant was not one of the robbers. He called Schleyhahn's name in court three times without producing him as a witness. Nine other witnesses were similarly called without being produced at the trial. In his closing statement, the prosecutor pointed out to the jury the reasonableness of the inference to be drawn from the defendant's failure to produce Schleyhahn—that he would not say that defendant was innocent.

Upon this appeal the defendant contends that he was denied an impartial jury; that trial counsel was incompetent; that the indictment was insufficient with reference to the aggravated assault offense; that he was incorrectly convicted of three offenses arising out of the same incident; that certain remarks in the prosecution's closing argument were prejudicial; and, finally, that the sentence imposed was disparate with the sentence imposed upon Schleyhahn.

The defendant's counsel had accepted a Mrs. Van Dyke as a juror without asking if she knew anyone connected with the prosecution. After her examination by the court, she had said she did not know the assistant state's attorney representing the state in the case. Upon examination by the state, she said she was a friend of the state's attorney, and after she had been accepted by defense and prosecution, the defense counsel asked permission to question the juror further and permission

was granted for purposes of inquiry in the nature of explanation, but not for purposes of excusing the juror. Defense counsel thereupon undertook further examination of the juror Mrs. Van Dyke, and that examination revealed a social acquaintance with the state's attorney and the fact that she had worked for him in his political campaigns.

■■ We view the case of *People v. Cole*, 4 Ill.App.3d 28, 271 N.E.2d 385 (Ill.S.Ct. Docket. No. 44627-June, 1973), as dispositive of this issue. In this case, unlike the facts in *Cole*, the defendant had not exhausted his peremptory challenges at the time he had questioned Mrs. Van Dyke and had accepted her. Further, under the authority of *Cole*, it is clear that the nature of the acquaintance and association here established is not such as to disqualify the juror from service.

■■ The second issue assigned is that the defendant's trial counsel was incompetent and that such representation denied the defendant a fair trial. Upon this voluminous and unusual record, that issue is difficult to resolve. In this case, counsel representing the defendant at trial was counsel of his own choosing. We recognize, however, that the right of the defendant to a fair trial is not diluted by the fact that he chose his own trial counsel as distinguished from having been the recipient of court-appointed counsel. While the cases speak in terms of some distinction between counsel of the defendant's own choosing and court-appointed counsel, it seems to us that the necessity for showing incompetence is essentially the same in both instances. Incompetence of trial counsel warranting reversal must be of such character as to make the trial a farce. *People v. Dean*, 31 Ill.2d 214, 201 N.E.2d 450; *People v. Bliss*, 44 Ill.2d 363, 255 N.E.2d 405.

In this case, the defendant places substantial reliance upon the case of *People v. DeSimone*, 9 Ill.2d 522, 138 N.E.2d 556. In that case, the defendant's counsel had told the jury the defense would be insanity, and that the burden would be upon the defendant to prove that defense. The court ultimatly gave the jury a correct statement of the law with reference to the burden of proof. At trial, counsel called many lay witnesses—supposedly to testify as to the defendant's insanity; but most in their testimony tended to show sanity and many gave irrelevant testimony. Upon inquiry by the court as to the reason for such conduct on the part of counsel, counsel indicated that he had not talked to most of the witnesses before the trial and did not know what their testimony would be. Several times in *DeSimone*, counsel advised the court that he was "stumped" and didn't know what to do next.

· The facts in this case vary substantially from the facts in *DeSimone*. In this case, counsel, at trial, was seldom, if ever, at a loss for words. He did not appear to inquire of the court what to do next nor did he appear

to be stumped, but rather he had to be restrained by the court from time to time rather than aided.

Defense counsel in this case engaged in unusual conduct. Such conduct can roughly be divided into instances where there was inept representation, for example, his failure to fully point out to the jury certain discrepancies in the police composite description and to utilize such discrepancy fully in cross-examination. Also, his failure to fully develop the defendant's offered alibi and allowing the use of the confession of Schleyhahn in such a way as to suggest the defendant was also guilty. The second area of conduct relates to the activity of counsel that suggests that the trial proceedings were nearly reduced to a farce. Such conduct related to the fact that counsel called out the names of witnesses who were not present and who had not been subpoenaed, general harassment of witnesses, persistent and repeated efforts to cross-examine witnesses upon irrelevant and embarrassing personal questions, and numerous nonsensical objections. Incidents of this type of conduct appear frequently in the record of the trial proceedings. Defense counsel often undertook vigorous and irrelevant cross-examination, apparently simply because it was his turn to examine the witness. In one instance, he made a point of complaining that the opposing attorney had available to him more and fresher water than was available to the defense counsel. He did engage in conduct which cannot be defended.

■■ The issue, however, is, did the defendant not receive a fair trial by reason of such conduct? In this case, the record is clear that the trial court constantly exerted every effort to maintain dignity and to protect the interest of the defendant. This effort by the trial court, notwithstanding frequent provocation by defense counsel, kept the trial from being wholly diverted from the question of the defendant's guilt or innocence and attention being focused upon the activity of counsel. In this case, the evidence of the defendant's guilt is very strong; indeed, we note that upon this appeal no issue is made as to the insufficiency of the evidence to convict. Under the cited cases, we cannot say that the defendant was deprived of a fair trial by reason of the unusual, and in some instances, almost bizarre conduct of counsel. The trial was not reduced to a farce, and we are not prepared to say that the demonstrated shortcomings of counsel made a difference in the outcome.

■■■ The third issue, relating to the sufficiency of the indictment, need not be discussed in any detail in view of our conclusion that the judgment entered upon the verdict as to the offense of aggravated assault must be vacated. In this case, the trial court properly imposed only one sentence. He did, however, enter judgments of convictions upon the jury verdicts of guilty. There is no showing in this record that the

offenses of aggravated assault and assault were independently motivated. (See *People v. Whittington*, 46 Ill.2d 405, 265 N.E.2d 679; *People v. Stewart*, 45 Ill.2d 310, 259 N.E.2d 24.) Where judgments of convictions are entered upon several verdicts and even though only a single sentence is imposed, the judgment upon the offenses involved which were not independently motivated will be reversed. *People v. Leggett*, 2 Ill.App. 3d 962, 275 N.E.2d 651.

■■ In his opening statement, counsel for the defendant stated that Schleyhahn had been subpoenaed and if called would testify that the defendant was not involved in this offense. While Schleyhahn was not produced as a witness, the defendant did introduce testimony to the effect that Schleyhahn had contacted him only 30 minutes before the arrest and therefore subsequent to the offense. A comment by the prosecutor in closing argument upon the failure to call Schleyhahn and the inference therefrom that if called Schleyhahn's testimony would not be favorable to the defendant, is assigned as error. Upon this record, however, we are not persuaded that such comment was prejudicial to the defendant.

■■ In *People v. Swift*, 319 Ill. 359, 150 N.E. 263, the court noted that where the defendant injects into a case his activity with a potential witness during a particular time for purposes of proving his innocence of the crime charged, his failure to produce such witness is a proper subject of comment by the state. See also *People v. Williams*, 40 Ill.2d 522, 240 N.E.2d 645.

■■ This record does not establish that the imposed sentence is excessive. Neither does it suggest an enhanced penalty for standing trial. Indeed, the trial court emphasized that such was not the case. The defendant Long's conduct was not the same as that of Schleyhahn and the cited case of *People v. Steg*, 69 Ill.App.2d 188, 215 N.E.2d 854, is therefore distinguishable on the facts and not here applicable.

The judgment of conviction upon the charge of aggravated assault and assault is reversed. The judgment and sentence imposed upon the offense of armed robbery is affirmed, and this cause is remanded to the circuit court of Sangamon County for the purpose of issuing an amended mittimus.

Affirmed in part, reversed in part, and remanded with directions.

SMITH and SIMKINS, JJ., concur.