THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANGEL SOTO, Defendant-Appellant.

First District (5th Division) No. 61098

Opinion filed December 23, 1975.

Paul Bradley and Allen L. Wiederer, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Donald M. Devlin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

In a jury trial, defendant was found guilty of murder, attempt murder, armed robbery, and two counts of aggravated battery. He was sentenced to terms of 100-300 years for the murder, 10-20 years for the attempt murder, 20-60 years for the armed robbery, and 3-10 years for each of the aggravated batteries. The sentences were ordered to run concurrently.

On appeal, defendant contends (1) he was not proven guilty beyond

a reasonable doubt; (2) it was error to refuse the performance of a courtroom demonstration; (3) he was improperly convicted of multiple charges arising out of a single incident; and (4) the murder sentence was excessive.

The record discloses that in the robbery of a liquor store, two men wearing masks shot the owner and a patron. The latter subsequently died of his wounds.

At trial, the owner testified he was unable to identify the faces of either of the two men involved in the robbery but stated that one of them took the tray from the cash register, which contained approximately $150, and the other, who had a blue steel automatic revolver, did the shooting. Both then ran out of the store and headed north on Milwaukee Avenue.

Leroy Nega, a witness for the State, stated that he was on his motorcycle stopped in traffic on Huntington Avenue for a Milwaukee Avenue traffic light at the time in question. (Huntington is the first east-west street north of the liquor store, which was on Milwaukee Avenue.) In substance, Nega testified that two men walked past him at a fast pace. One was wearing a mask and carried a box about three inches in depth, one and one-half feet long and one foot wide. The other man, who was closest to the street and to Nega wore no mask. After they passed him, he observed both run south in an alley.

Two days later, the police were called to the scene of an unrelated shooting. Shortly thereafter, defendant was arrested after being identified by witnesses as the man who had done that shooting, and a blue steel semiautomatic pistol was taken from him. Two days after defendant was arrested, Nega was shown eight or ten photographs by the police. He failed to identify defendant when he first looked through the photographs, but after again going through them he picked out the two pictures of defendant as the man without the mask that he had seen on Huntington Avenue two days before. The gun taken from defendant was introduced into evidence in the trial of the instant case, and a firearms technician who had compared bullets test-fired from this revolver with those removed from the owner and patron testified that the bullets had been fired from the same gun. There was a verdict of guilty on all charges.

OPINION

Defendant first contends he was not proven guilty beyond a reasonable doubt because (1) the identification testimony was insufficient to sustain his conviction; and (2) the evidence was insufficient to establish

that the gun found in his possession at the time of his arrest was the one used in the crimes charged.

He points out that Nega, the sole identification witness, gave conflicting testimony as to where the two men were when he first saw them on Huntington Avenue; namely, that he first saw them about 100 feet away at the corner of Huntington and Milwaukee; then that he first saw them when they were directly to his right, about 100 feet from the corner; after which, he again stated that he first saw them at the corner; still later, he said they were immediately to his right when he first saw them; and finally, he again said he first saw them at the corner. He argues that if Nega did not see the two men until they were directly to his right, he had little or no opportunity to see defendant's face; and furthermore, because Nega could not identify the box carried by the man allegedly with defendant (beyond stating its dimensions,) this, he argues, suggests that the lighting was not good. Defendant, coupling these two arguments with the fact that Nega did not initially recognize defendant in the photographs, urges that Nega's identification testimony was improbable and unconvincing.

It is well established that it is within the province of the trier of fact to determine the credibility of witnesses, and we will not interfere with that determination unless the verdict is found to be palpably contrary to the weight of the evidence. *People v. Pulaski,* 15 Ill.2d 291, 155 N.E.2d 29, *cert. denied,* 359 U.S. 997, 3 L.Ed.2d 985, 79 S.Ct. 1134.

■■ Here, defendant did not testify and no alibi witnesses were offered on his behalf. Nega was the only identification witness and, although his testimony was conflicting as to where he first saw the two men, he did testify that the lighting was good and that he had no difficulty in seeing defendant's face from a front and side view as the two men passed him. We cannot accept defendant's statement that the inability of Nega to identify the object defendant's alleged companion was carrying, other than by its dimensions, is indicative of poor lighting in the area. The fact that he was able to give the dimensions of the box indicates to the contrary. Moreover, we see nothing in the record to indicate that the police used suggestive procedures, as implied by defendant, in relation to Nega's photographic identification. It appears that two photos of defendant were included in a stack handed to Nega by the police. There were at least six and perhaps ten in the stack, and we do not believe that the inability of Nega to identify defendant from the photos on his first viewing suggests in itself that his identification on a second viewing was tainted.

In further support of the contention that he was not proven guilty

beyond a reasonable doubt, defendant claims that the gun received in evidence was improperly admitted because it was not sufficiently identified. We see no merit in this contention. Officer Hill testified that after taking a semiautomatic blue steel pistol from defendant, he carried it to the police station where he inventoried it and then gave it to the desk sergeant to be sent to the crime laboratory. The record includes not only his signed inventory slip containing the serial number of the gun but also a receipt of the crime laboratory bearing the same number. Hill further testified that the gun introduced in evidence was the one he removed from defendant. It is not suggested here by defendant that the procedures used in the handling and testing of the gun were improper.

■■ The principle to be applied in the case before us is that, in the absence of any indication of substitution, alteration, or other form of tampering, reasonable protective techniques are sufficient. (*People v. Wrona*, 7 Ill.App.3d 1, 286 N.E.2d 370; see also, *People v. Scott*, 3 Ill. App.3d 493, 279 N.E.2d 19.) We believe that reasonable protective means were used here and that the gun was sufficiently identified as the one removed from defendant.

In view of the foregoing, we are of the opinion that the State presented sufficient evidence to satisfy the requirement of proof beyond a reasonable doubt.

Defendant next raises a question as to whether the trial court abused its discretion in prohibiting his counsel from conducting a courtroom demonstration. An attempt was made to show the improbability of Nega's testimony that he observed defendant walking at a fast pace for a distance of approximately 200 feet in about two minutes. Defendant's counsel wished to show this was not probable by walking two lengths of the courtroom, which he estimated to be approximately 40 to 50 feet long, and at the same time he asked that Nega announce the elapsed time as determined from the courtroom clock. The court prohibited this action on the ground that the clock was not calibrated, the length of the courtroom had not been determined, and because counsel might not walk at the same speed as defendant had reportedly walked.

■■ It is clear that the trial judge has a wide degree of discretion in ruling upon the admissibility of courtroom demonstrations. (*People v. Pisarski*, 6 Ill.App.3d 235, 285 N.E.2d 551.) As stated in McCormick on Evidence § 202 (2nd ed. 1972):

> "Usually the best gauge of the probative value of experiments is the extent to which the conditions of the experiment were identical with or similar to those obtaining in respect to the litigated happening. Accordingly, counsel in planning experiments must

seek to make the conditions as nearly identical as may be, and in presenting the evidence he must be prepared to lay the foundation by preliminary proof of similarity of conditions."

Here, no such foundation was presented either directly or by offer of proof. In view thereof, the trial court did not abuse its discretion in prohibiting the demonstration.

Defendant also contends his sentence of 100 to 300 years for murder was excessive, and he requests a reduction thereof.

■■ Under the provisions of section 5—8—1(c)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(1)), the minimum term for murder is 14 years. The section permits a more severe minimum sentence upon consideration of the offense and the history and character of defendant. It has been consistently held that where it is claimed that the punishment imposed is excessive, although within the limitations prescribed by the legislature, "'that sentence should not be disturbed unless it is greatly at variance with the purpose and spirit of the law or manifestly in excess of the proscriptions of section 11 of article II of the Illinois constitution [1870].'"[1] (*People v. Sprinkle,* 56 Ill.2d 257, 264, 307 N.E.2d 161.) The imposition of a sentence is a matter of judicial discretion, and the sentence imposed by the trial court should not be altered by a reviewing court unless it is apparent that the judge abused his discretion. *People v. Burbank,* 53 Ill.2d 261, 275, 291 N.E.2d 161, *cert. denied,* 412 U.S. 951, 37 L.Ed.2d 1004, 93 S.Ct. 3017; *People v. Kendricks,* 4 Ill.App.3d 1029, 283 N.E.2d 273.

■■ Here, the sentence was within the limits prescribed by the legislature. (Ill. Rev. Stat. 1971, ch. 38, par. 9—1(b).) The trial judge held a hearing in aggravation and mitigation, and he was in a better position to determine an appropriate sentence. Moreover, under section 3—3—3(a)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1003—3—3(a)(1)), defendant will be eligible for parole when he has served "twenty years less time credit for good behavior" and, under Administrative Regulation 813 of the Department of Corrections, Adult Division, good behavior on his part could result in eligibility for parole within 11 years, 3 months. Considering the totality of the circumstances here, we cannot say that there was an abuse of discretion in the sentencing.

■■ Finally, defendant argues his conviction on the two counts of aggravated battery should be reversed. He was convicted of armed robbery and the attempt murder of the liquor store owner and also found guilty

---

[1] Now article 1, section 11 of the Illinois Constitution of 1970.

of two counts of aggravated battery of the same person. He contends that the same course of conduct gave rise to his conviction of attempt murder and aggravated batteries. It appears to us that these three convictions all arose from ·the same act; namely, the shooting of the owner with a single bullet. The State admits this fact and, accordingly, we hold that the convictions on the lesser offenses of two counts of aggravated battery cannot stand. See *People v. Lilly*, 56 Ill.2d 493, 309 N.E.2d 1.

For the reasons stated, the judgment is affirmed as to the convictions of murder, attempt murder, and armed robbery, but reversed as to the two convictions of aggravated battery, and the judgment entered as to the latter offenses is vacated.

Affirmed in part.

Reversed and vacated in part.

BARRETT, P. J., and LORENZ, J. concur.