THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN MAYNARD BRADLEY, Defendant-Appellant.

Fourth District   No. 13522

Opinion filed November 18, 1976.

Helga Kahr, of Shackleford Community Institute Legal Service, of Champaign, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (G. Michael Prall and James R. Sanders, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

Defendant John M. Bradley was found guilty by a jury of two counts of kidnaping Sandra Masel and Linda Maschak in Champaign County, Illinois, and removing them against their will to Cook County, Illinois. Post-trial motions were denied and a sentence of 2 years 6 months to 7 years 6 months' imprisonment was imposed on each count, the sentences to run concurrently. This appeal followed and we affirm.

In the early morning hours of May 4, 1974, the two victims of the kidnaping set out to hitchhike from Lincoln Avenue and Interstate 74 in the city of Urbana to a party near Prospect Avenue and Interstate 74 in the city of Champaign, Illinois. The women were carrying a brown grocery bag containing four quart bottles of beer. They were picked up by two black males driving a dark blue 2-door Pontiac. The women entered the car voluntarily, Sandra taking a seat behind the driver and Linda a seat behind the passenger.

When the car reached the vicinity of Prospect Avenue, the women asked to be let out of the car but were told by one of the men that they knew a better way to get to the party. The car continued west and exited from Interstate 74 onto Interstate 57 going north toward Chicago. Requests by the women to be let out of the car were refused. At one point, at the direction of the driver, the male passenger got into the back seat and sat between the women. The passenger also passed the bag containing the beer to the driver, but not before Sandra removed one of the quart bottles.

Before reaching Chicago, the car made one stop on the shoulder of the interstate. There were no other cars in sight and no exits nearby. Both men left the car and removed the keys to the ignition. Upon their return to the car, they assumed their prior positions with the passenger in the back seat. As they did so, Sandra hit the driver in the back of the head with the bottle of beer she had retained. The bottle did not break. The driver retaliated by striking Sandra and the passenger by striking Linda and choking Sandra.

As the car left Interstate 57 and entered the Dan Ryan Expressway, the driver, who had consumed the three quarts of beer passed to him, began to race another car. His speeding resulted in an accident observed by Mr. Daniel Behr, a taxicab driver. The kidnaped women got out of the car and were placed by Mr. Behr in his taxi. Behr then surveyed the accident

scene and placed an emergency call to the police. Before Behr could ascertain the condition of the driver and the male passenger, they left the scene in the vehicle used in the kidnaping. Behr followed the car for some distance until it was engaged in another collision. During this time, Behr noted the car's license number and reported it to the investigating officers. After taking his fare to his destination, Behr took the two women to a friend's house.

The defendant was arrested on January 8, 1975. A preliminary hearing was held on March 26, 1975, at which time an attorney was appointed to represent him. That attorney filed discovery motions and discovery was ordered by the court to be made within ten days from that date. The State failed to answer within that time. On April 22, 1975, the defendant's present attorney was appointed to represent him. Defendant's counsel thereafter filed a motion to compel discovery by the State and its answer was delivered four days later, ten days prior to the start of trial which was begun on May 6 and finished on May 7, 1975.

Following the occurrence, Sandra gave the Illinois State Police a description of her assailants which included a description of the driver as having a 1½-inch scar or bald spot on the back of his head. After interrogation by the State, the two victims twice attempted to identify the defendant from a group of photographs. On the first such attempt on May 4, 1974, neither victim was able to identify their assailants. At another photo spread on May 15, 1974, Sandra did choose the defendant's picture from a group of 18 photographs, but Linda was unable to do so. After the defendant's arrest, a lineup was held at which Linda identified the defendant as the driver of the car, but Sandra was unable to positively identify the defendant as being involved in the kidnaping. Both women, however, were able to positively identify the defendant in court.

There was no dispute as to the defendant's ownership of the car involved. However, the defendant turned in a stolen auto report later in the morning of May 4, 1974, and produced two witnesses to support his alibi that he was home in bed during the time the kidnaping was to have taken place. The other male involved in the kidnaping was never identified.

■■ The first issue presented by defendant for review concerns the furnishing of late and incomplete discovery by the State. Defendant claims that neither he nor his attorney discovered the existence of eight latent fingerprints taken from the defendant's car after it was abandoned following the second accident. While the existence of these fingerprints, only one of which was identified as belonging to the defendant, may have been probative of his innocence and in support of his alibi defense, we cannot say that the failure of the State to tender the facts of their existence on discovery amounts to reversible error. In *People v. Parton* (1976), 40

Ill. App. 3d 753, 354 N.E.2d 12, we quoted the rule established by *People v. Dixon* (1974), 19 Ill. App. 3d 683, 312 N.E.2d 390, that it is not for a court of review to determine the materiality of evidence withheld on discovery and the error occasioned by that withholding cannot be seen as harmless. The facts here are different from those in *Parton*. Here there is direct and positive evidence of guilt and the failure to make timely disclosure can under such circumstance be harmless error. Here, the defendant was positively identified in court by the two victims as one of their kidnapers. Such evidence is considered the best proof of guilt and overrides any circumstantial evidence in support of an alibi. (See *People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182.) When the defendant's guilt is shown by identification testimony, any evidence withheld on discovery is at least diminished in materiality as it cannot controvert that identification.

■■ The same can be said of the other evidence allegedly withheld, namely, the photographs used in the photo identification spread by the State police on May 15. The record also discloses, however, that defendant was given notice of the existence of the collection of photographs by the police reports which were tendered on discovery. While they were not specifically noted in the State's answer, it cannot be said that defense counsel was caught unaware of them. Also, it appears from the record that prior to the start of trial, defense counsel was invited by the State's Attorney to inspect the photographs but failed to avail herself of that opportunity. Where the defendant's request for pretrial inspection of evidence in the possession of the prosecution is granted, but the defendant has not taken the opportunity to do so, that right to inspection is waived and cannot be complained of at a later date. *People v. Schabatka* (1974), 18 Ill. App. 3d 635, 310 N.E.2d 192, *cert. denied*, 420 U.S. 928.

■■ Defendant also complains generally that by reason of the State's lack of diligence in complying with the discovery order he was put to an election between going to trial unprepared and seeking a continuance which would toll the running of the 120-day period and thus constitute a waiver of his right to a speedy trial. This contention cannot be sustained in light of *People v. Williams* (1974), 59 Ill. 2d 402, 320 N.E.2d 849. There, it was held that even a single day preparation time before the expiration of the 120-day limit is not a denial of due process when the defendant can, but fails to seek a continuance. It follows that the election to which the defendant was put violates no constitutional guarantee. Any prejudice generated by the State's late compliance with the discovery order was remedied by the defendant's newly appointed counsel moving for immediate compliance on April 22, 1975.

■■ At least part of the fault for the lack of preparation time available

to defense counsel is attributable to the failure of the public defender who was first appointed to represent the defendant, and for this reason he raises the issue of whether there was a deprivation of due process from the public defender's inadequate and ineffective pretrial assistance. While the sixth amendment guarantee of assistance of counsel extends to the pretrial stage (*People v. Odom* (1966), 71 Ill. App. 2d 480, 218 N.E.2d 116), there is no evidence that the public defender here conducted Bradley's defense during this time so incompetently as to constitute a deprivation of the constitutional guarantee. The test for determining whether the incompetency of counsel has deprived the defendant of a fair trial is whether the incompetency reduces the trial to the level of a farce. (*People v. Long* (1973), 12 Ill. App. 3d 974, 298 N.E.2d 784.) That was not the case here, as the defendant's new attorney presented his case in a forceful and effective manner. Any additional time burdens placed on that attorney did not reduce her performance to the level of a farce.

■■ During the cross-examination of Sandra Masel, defense counsel asked her to leave the witness stand and examine the back of defendant's head for a mark like the one borne by the driver of the car. The witness lost her composure and began screaming that she did not want to touch the defendant. The trial court called a recess but reserved his ruling on a defense motion for a mistrial pending Ms. Masel's conduct upon her return to the stand. After the witness completed her testimony without further incident, the motion for mistrial was denied. We find no error. A genuine emotional outburst by a witness giving vent to natural feeling is not always grounds for granting a mistrial. (*People v. Pisarski* (1972), 6 Ill. App. 3d 235, 285 N.E.2d 551.) The decision to grant a mistrial is within the discretion of the trial court (*People v. Hering* (1974), 23 Ill. App. 3d 507, 318 N.E.2d 757), and that discretion was not abused here.

■■ The defendant also claims error in the admission of 18 photographs used in the May 15 photo spread at which he was identified as the driver of the car. These photographs, which went to the jury, were police mug shots and indicated the defendant's prior arrest. While the trial court attempted to avoid showing the jury the defendant's prior record by having all writing on the photographs excised, the mug shot itself still indicates a prior arrest of the defendant to anyone conversant with a post office wall. However, mug shots from which a defendant was identified may be admitted for the purpose of showing how the defendant could have been identified even though they indicate a prior arrest. (*People v. Smith* (1974), 20 Ill. App. 3d 756, 314 N.E.2d 543; *People v. Adams* (1974), 22 Ill. App. 3d 665, 318 N.E.2d 278.) Here, the pictures were not introduced for the purpose of showing a prior arrest but rather in response to the defendant's having raised the issue of the suggestiveness

of the identification procedure during cross-examination. No error was involved in their admission.

■■ Defendant also claims as error several evidentiary rulings made by the trial court during the course of the trial. The court correctly prevented Marvin Cook, one of defendant's alibi witnesses, from testifying as to how the defendant responded to Cook's question regarding the whereabouts of Bradley's car. The trial court properly prevented defense counsel from conducting an in-court experiment when the conditions of the experiment had changed from the time in controversy. The improper argument of the prosecutor during the course of his objection to the attempted demonstration is not reversible error.

■■ Defendant next claims he was not proven guilty beyond a reasonable doubt. While he did introduce evidence of an alibi and attacked the credibility of the victims' in-court identification of him, that identification testimony is sufficient evidence to support the conviction. (*Novotny*.) Here the witnesses shared an automobile with the defendant during the trip from Champaign to Chicago and had several opportunities to view the defendant's full face on a number of occasions during that ride. Even when an alibi is produced, the credibility of an identification witness is for the jury to determine. *People v. Goines* (1974), 20 Ill. App. 3d 1055, 314 N.E.2d 193; *People v. Henderson* (1976), 39 Ill. App. 3d 502, 348 N.E.2d 854.

■■ Finally, defendant challenges his sentence as being excessive and seeks a reduction of this sentence. Absent a finding of abuse of discretion, this court cannot substitute its judgment for that of the trial court. (*People v. Gama* (1975), 33 Ill. App. 3d 869, 338 N.E.2d 583.) We find no abuse of discretion here. Accordingly, the judgment and sentence are affirmed.

Affirmed.

SIMKINS and REARDON, JJ., concur.