**STATE of Rhode Island,**

v.

**Lloyd WILEY.**

**No. 89-45-C.A.**

Supreme Court of Rhode Island.

Dec. 20, 1989.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., Annie Goldberg, Sp. Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

KELLEHER, Justice.

The defendant, Lloyd Wiley (Wiley), was charged by indictment with the crime of robbery in violation of G.L.1956 (1981 Reenactment) § 11–39–1. On February 18, 1988, a Superior Court jury, after a four-day trial, found Wiley guilty. Wiley now appeals, raising two issues. The facts of the case are as follows.

On the evening of December 24, 1984, the victim, Beatrice Cocroft, attended a party at the YMCA in Newport, Rhode Island. Upon leaving the event, she began to walk home. As she approached the corner of West Main Road and Stockton Drive in Middletown, a man came up behind her. He placed his hand over her face, caused her knees to buckle under her, and said, "Don't move or I will kill you." As the assailant lowered her to the ground, he instructed her to not look at his face. Despite this warning Ms. Cocroft was able to see his face. She then handed him her pocketbook. As he took it from her, Ms. Cocroft screamed, jumped to her feet, and ran away. The assailant ran in the opposite direction.

Within a few hours of the incident Ms. Cocroft described the assailant to the Middletown police as a young male measuring approximately six feet in height, weighing approximately one hundred and seventy-five pounds, and wearing jeans, sneakers, and a light gray jacket. The next day Ms. Cocroft was shown a photo array by the police. Although she did not identify any of the photographs as being of the individual who had robbed her, she did note that the face of one individual in the photo array, Raymond Massey (Massey), "looked familiar" to her, and had similar features as those of her attacker. No further action was taken at this time.

Then, approximately ten months after the commission of the crime, Ms. Cocroft, while in a local supermarket, saw a man whom she recognized as the attacker. Several days later she notified the police, and on the following day she was asked to view another photo array. This time she picked out a photograph of defendant, Wiley, and indicated that he was the individual who had robbed her.

At trial Ms. Cocroft testified that her opportunity to view the attacker was short, "maybe not even two seconds." She did not change her testimony on this point during cross-examination. She had, however, during the hearing of a pretrial motion to suppress the identification, stated that her opportunity to view his face had lasted five seconds. At the completion of her trial testimony, the trial justice asked Ms. Cocroft to participate in an experiment in which she would approximate the amount of time that she was "face to face" with her attacker. The trial justice instructed her about the mechanics of the experiment. He would tell her when to "start," and at a point when the appropriate amount of time had elapsed, she was to exclaim, "Stop!" After some initial difficulties the experiment went forward. At the end of the experiment the trial justice stated that "about 15 seconds" had elapsed. He then asked the witness again to participate in the procedure in an effort to approximate the amount of time encompassed by the entire incident. Ms. Cocroft agreed, and at the conclusion of this second test the trial justice estimated that "about 18 or 19 seconds" had passed.

Following the second experiment, defense counsel objected to the demonstration, citing two reasons. The first was that the evidence offered by this witness did not indicate that she and the assailant were ever "face to face." Second, defense counsel disputed the trial justice's estimates of elapsed time. In defense counsel's estimation only three seconds had passed during the first experiment. The prosecutor estimated that six and one-half to seven seconds had elapsed. Defense counsel then asked that the court's estimates be stricken

from the record. This request was denied, but the trial justice agreed to give cautionary instructions on the issue to the jury.

As the trial progressed, defense counsel sought to question the Middletown police officer who was initially assigned to investigate the complaint about whether his department had the photograph of Massey that was included in the first photo array shown to Ms. Cocroft or any other photograph of Massey taken about the same time. The state objected, and the objection was sustained. The trial justice indicated that he would not allow any other photograph of Massey into evidence. The record indicates that the photograph used in the array had been replaced in the Middletown police files and was no longer available. Assuming that defense counsel intended to have the jury compare Wiley's features with those of Massey, which defense counsel did not dispute, the trial justice ruled that such comparison by the jury would amount to no more than "rank speculation," and therefore, he refused to permit it.

■ Wiley raises two issues on appeal. First, Wiley argues that the trial justice erred when he permitted the jury to consider in its deliberations his personal estimates of the time that elapsed during the courtroom experiments. Second, Wiley asserts that the trial justice abused his discretion in holding irrelevant a substitute photograph of Massey, the person whom the victim had identified as having features similar to those of the assailant, and in not permitting defense counsel to establish a foundation of relevancy. Because we find that harmful error occurred in the conducting of the courtroom experiments and in the trial justice's comments following those experiments, we vacate the judgment of conviction against defendant. Furthermore, we find that the trial justice did abuse his discretion when he held the substitute photograph of Massey irrelevant without allowing defense counsel the opportunity to establish its relevancy.

We turn our attention first to the question of whether the trial justice erred in conducting the courtroom experiments and

in allowing the jury to consider his personal estimates of elapsed time during those experiments.

To begin with, it has been stated that "the well-planned courtroom experiment may provide extremely striking and persuasive evidence, and the opportunities for utilizing such experiments should not be overlooked." *McCormick on Evidence*, § 215 at 678 (3d ed. Cleary 1984). Such experiments, however, are held to the "basic requirement of similarity of conditions which is applicable to experimental evidence generally." *Id.* at 677. *See also Smith v. State*, 771 P.2d 1374 (Alaska Ct. App.1989)(for experimental evidence to be admissible, it should be developed under conditions substantially similar to those surrounding the event in issue); *People v. Soto*, 35 Ill.App.3d 166, 341 N.E.2d 107 (1975)(counsel, in presenting the evidence from an experiment, must be prepared to lay the foundation by preliminary proof of similarity of conditions); Comment, *Validity and Relevancy Analysis: An Approach to the Admission of Experimental Evidence*, 26 Me.L.Rev. 273, 275 (1974)(for the results of an experiment to be admissible, the experiment must have been conducted under conditions substantially similar to those surrounding the event).

The experiments conducted in the case at bar did not meet the basic requirement of similarity of conditions. The attack occurred on a rainy night in December. Ms. Cocroft testified that she was "terrified" as she was being attacked. Her ability to estimate elapsed time during this terrifying attack would seem to bear little relationship to her ability to do the same in a courtroom. And although the rule of similarity of conditions "does not require an identity of conditions[,]" it does demand "that degree of similarity which will insure that the results of the experiment are probative." *Smith v. State*, 771 P.2d at 1376 (quoting *Love v. State*, 457 P.2d 622, 627–28 (Alaska 1969)).

We acknowledge that the trial justice does possess the discretion to allow the experiment and admit the evidence; however, he " 'cannot use his discretion to de-

cide that despite a plain lack of substantial similarity in conditions he will, nevertheless, admit the evidence.'" *Id.* It is our opinion that there was a "plain lack" of similarity between the conditions as they existed in the courtroom and those of the night that the incident occurred. Ms. Cocroft was under great emotional duress during the attack. Such conditions are not easily duplicated in the controlled environment of the courtroom. We therefore hold that the trial justice abused his discretion in conducting the experiment in such a manner.

Furthermore, at the conclusion of each of the experiments, the trial justice proceeded to give his personal estimates of the amount of time that had elapsed. Despite the fact that both defense counsel and the prosecutor disputed the trial justice's estimate of the elapsed time in the first experiment, the trial justice denied defense counsel's request that his comments be stricken. Wiley now argues that these comments were beyond the bounds of appropriate judicial behavior and therefore constitute a basis for vacating the judgment of conviction. We agree.

As we have emphasized in *State v. Dame*, 488 A.2d 418, 422 (R.I.1985):

"In a jury trial, it is exclusively the province of the jury to determine the weight and credibility to be given to the testimony of each witness. [Citations omitted]. It is well settled by this court, therefore, that a trial justice's comments upon the evidence, if made in the presence of the jury, must be 'completely impartial,' *State v. Holland*, 122 R.I. 339, 347, 405 A.2d 1211, 1216 (1979) * * * otherwise such a comment might result in a 'clear invasion of the province of the jury.' *State v. Aptt*, 441 A.2d 829, *State v. Pella*, 101 R.I. 62, 70, 220 A.2d 226, 231 (1966)."

These limitations on the privilege of the trial justice to comment on the evidence exist, in part, because in the eyes of a jury, the court "'occupies a position of preeminence and special persuasiveness.'" *United States v. Trapnell*, 512 F.2d 10, 12 (9th Cir.1975). As the United States Supreme

Court noted over fifty-five years ago, "[T]he influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.'" *Quercia v. United States*, 289 U.S. 466, 470, 53 S.Ct. 698, 699, 77 L.Ed. 1321, 1325 (1933)(quoting *Starr v. United States*, 153 U.S. 614, 626, 14 S.Ct. 919, 923, 38 L.Ed. 841, 846 (1894)).

Even though the case at bar does not present us with the oft-complained-of situation of a trial justice's appearing to favor one party in his or her charge to the jury, we are faced with equally inappropriate behavior. The ability of Ms. Cocroft to view and then later to identify the assailant was the cornerstone upon which the case against defendant was built. When the trial justice gave his opinion about this disputed issue, following a less-than-ideal series of courtroom experiments, it should have been clear that even cautionary instructions would not remedy the situation. We have often indicated that "in this jurisdiction a trial justice is under a strict obligation to avoid disclosing any opinion regarding the weight of the evidence or the credibility of the witnesses as long as the case is still before the jury." *State v. DeMasi*, 413 A.2d 99, 100 (R.I.1980). The issue of how long Ms. Cocroft actually viewed the assailant's face was one of fact and thus completely within the province of the jury. And, as we have stated in *State v. Dame*, 488 A.2d at 424,

"[I]t is the function of the jury to wrestle with such questions of fact rather than to have the question resolved by the trial justice who is generally looked upon with awe by the jurors and whose opinions, if given on questions of fact as well as of law, will enormously influence them."

The trial justice's comments, in effect, amounted to an invasion of that province.

We therefore hold that the trial justice's comments were not harmless error and, as such, constitute the basis for vacating the judgment of conviction.

■ We now turn to the second issue presented by defendant's appeal. Wiley asserts that the trial justice abused his

discretion in holding irrelevant a substitute photograph of Massey without permitting defense counsel to establish a foundation of relevancy.

It appears from the record that the photograph of Massey contained in the first photo array viewed by Ms. Cocroft was no longer available at the time of trial. Defense counsel wanted to place into evidence the photograph of Massey that was on file with the Middletown police department at the time of trial. The trial justice held the photograph to be irrelevant and would not allow it to be placed into evidence. He stated that to do so would "allow the jury to make rank speculation of the photograph presented to them for the purposes of comparison" because it was not the actual photograph shown to Ms. Cocroft shortly after the incident.

It is well settled in this jurisdiction that "questions of relevancy are addressed to the sound discretion of the trial justice." *State v. Champa,* 494 A.2d 102, 106 (R.I. 1985) (quoting *State v. Barnville,* 445 A.2d 298, 302 (R.I.1982)). And as we have stated in *State v. Brennan,* 527 A.2d 654, 656 (R.I.1987), "[A] trial justice's ruling on the admission or exclusion of evidence on relevancy grounds will not be disturbed absent a showing of abuse of discretion."

However, Ms. Cocroft's comments concerning the similarity of features between Massey and her attacker, coming so close in time to the actual incident, are of considerable significance in a case that was based upon an identification made nearly a year later. The trial justice, in preventing defense counsel from attempting to establish a foundation of relevancy for the substitute photograph, discounted this significance. We find this action to be an abuse of discretion. Given the attendant circumstances, defense counsel should have been afforded the opportunity to establish the similarity between the original and the substitute Massey photographs. Thus, in fairness to the defendant, we order that a hearing be held on the issue of whether the substitute photograph of Massey was so different from the photograph contained in the photo array viewed by Ms. Cocroft as to cause it to be irrelevant. This hearing will be held in the context of a new trial which will be necessary in any event.

For the reasons stated, the defendant's appeal is sustained. Accordingly the judgment of conviction is vacated, and the case is remanded to the Superior Court for a new trial.