THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES DIXON, Defendant-Appellant.

(No. 57885; ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮—April 24, 1974.

Jeffrey Haas, of Chicago, and Kathy Auchincloss and Peter Schmiedel, Senior Law Students, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Linda West Conley, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

The defendant, James Dixon, was charged by indictment with the murder of Ronald Thompson. Defendant was tried in a bench trial in

the Circuit Court of Cook County before the Honorable Daniel Ryan. A directed finding of not guilty was made as to the co-defendant, Larry Littleton, while defendant James Dixon was found guilty of murder and was sentenced to serve a term in the penitentiary of not less than 25 nor more than 60 years. James Dixon appeals this conviction claiming that:

(1) He was not proven guilty beyond a reasonable doubt;

(2) He was denied a fair trial and due process of law by the State's failure to produce certain police reports in response to defendant's discovery motion;

(3) The trial court erred in not granting defendant's motion for a new trial based on newly discovered evidence; and

(4) The sentence imposed by the trial court was excessive.

The facts as presented at trial are as follows:

Just after midnight on the evening of April 24-25, 1971, Ronald Thompson was shot to death on a corner at the intersection of 93d and Union on the south side of Chicago. Ronald's 15-year-old brother, Mitchell (also referred to as "Sylvester") testified as the only occurrence witness presented by the State. On the night of the shooting Mitchell was at his home with several friends. He testified that his mother was attending a wedding reception that evening and had left him with strict instructions not to have any company over while she was gone. Since he was afraid that his mother might come home at any time and find his friends there in defiance of her orders, Mitchell stated that every time he saw a car's lights or heard a car pass, he would go to the window to see if it was his mother returning.

At about 12:30 that evening, Mitchell said he saw a car's lights and went to the window in time to see a car (not his mother's) coming down the street at about 45 miles per hour. At the same time he saw his brother, Ronald, near the intersection of 93d and Union, walking south on 93d, approximately two houses north of the intersection. Mitchell's vantage point was four houses south of the intersection, where a street light was located. Mitchell turned from the window and walked back into the room when he heard a car "screech". He returned to the window to see two boys get out of a car. He recognized one as Larry Littleton and the other as a person known to him as "Looney". They talked to Ronald for a few seconds when Ronald began to walk past them. Mitchell then stated that he saw "Looney" take a shotgun from under his coat and heard him yell, "Gangster thing." He further testified that as he ran from the window to warn his brother he heard a shotgun being fired. Mitchell ran down to the doorway of his home and as he opened it Larry Littleton, a boy called "Lumberjack" and the defendant ran past.

As defendant passed the doorway, he pointed the shotgun in Mitchell's direction. Mitchell fell to the floor and closed the door. Mitchell later identified a police photograph of "Looney", the person he saw with the shotgun, as the defendant James Dixon.

The defense presented defendant's own testimony, in which he denied taking part in the shooting and stated that he was at a wedding reception from about 10:45 P.M. until 3 A.M. on the night of the incident. Five persons, who were present at the wedding reception at 10330 South Peoria that evening testified to corroborate defendant's alibi.

In rebuttal, the State offered the testimony of Officer James Davis. The night before he testified at trial, he drove from 93d and Union to 10330 South Peoria. Driving at 30 miles per hour, the trip took Officer Davis less than 5 minutes. No further evidence was presented by either side and defendant was found guilty of murder.

Some 3 weeks after defendant was found guilty, his counsel filed a "Motion for a New Trial based on Newly Discovered Evidence." The focus of this motion was a statement given by one Wendell Robinson to the Chicago Police Department after the shooting. Robinson had been present at the home of Mitchell Thompson during the evening of April 24-25, 1971. He left just prior to the incident, but had heard what was apparently the shot that killed Ronald Thompson. A discovery motion was filed prior to trial which asked, *inter alia*, that the following be turned over to the defense:

> "1. A list of the names, and the last known residence and business addresses and telephone numbers of the following persons;
>
> A. All persons whom the State knows to have knowledge of the alleged offenses.
>
> B. All persons whose testimony would be favorable to the defense.

* * *

> 2. A full and accurate copy of all written, transcribed, noted or recorded—as well as the substance of all oral—statements and Grand Jury Testimony that were given by or taken from each person specified in Paragraph 1 above, * * *".

The Chicago police spoke to Wendell Robinson in connection with the shooting of Ronald Thompson on April 25, 1971, and a statement was taken from him. Neither this statement or Wendell Robinson's name and address were included in the State's response to the above motion. The record does not show that they were given to the defense at any time prior to the end of the trial. Wendell Robinson testified as a witness during a hearing on the motion for a new trial. The motion was denied, as was a later motion for a new trial based on other grounds.

This court is of the firm opinion that the statement of Wendell Robinson to the police regarding the incident should have been turned over to defendant prior to trial. Mitchell Thompson, the sole witness for the State, testified that he heard a car, heard its brakes "screech" and saw two boys emerge. One of these, who Mitchell saw with a shotgun, was the defendant, James Dixon. Mitchell did not see the shooting of his brother, but saw defendant run past his door just a short time later. The statement given to the police by Wendell Robinson is to the effect that he saw a group of boys on foot (not in a car) go to the corner where the shooting occurred, he heard the shot and then saw them flee. He did not see or hear the car that Mitchell Thompson described, or hear a shout of "Gangster thing" as Mitchell Thompson related as having preceded the sound of the shotgun blast. (Wendell Robinson's statement placed him close enough to the scene of the shooting that he should have been able to hear these things take place, if they in fact took place.)

■■ In *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed.2d 215, 83 S. Ct. 1194, the Supreme Court held that "* * * the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (373 U.S. at 87.) The Illinois courts have adopted the *Brady* rule (*People v. Hoffman*, 32 Ill.2d 96, 203 N.E.2d 873) and have expanded upon it. (See also *People v. Murdock*, 39 Ill.2d 553, 560, 237 N.E.2d 442 and *People v. Holiday*, 47 Ill.2d 300, 303, 265 N.E.2d 634.) In the instant appeal then, our inquiry must be one to determine whether Wendell Robinson's statement was favorable to the defendant, James Dixon.

The statement in question is quite clearly favorable to the defendant. The State's entire case consisted of the testimony of one witness, Mitchell Thompson. The statement of Wendell Robinson gives a version of the incident which differs in several important details and was, therefore, favorable to the defendant in that it reflected adversely upon the credibility of the State's sole witness. Under the *Brady* rule, these reports had to be turned over if they existed at the time they were requested by defendant. (Even though it claims that these reports were not "deliberately withheld by the prosecution", the State's brief concedes that, "there is no doubt that the police reports were in existence at the time of trial.") As Justice Douglas stated in *Brady*, the obligation to turn over evidence exists "irrespective of the good faith or bad faith of the prosecution." (373 U.S. at 87.) It would then be no excuse that the police had inadvertently or deliberately failed to give these reports to the prosecution, or that the particular prosecutor trying the case did not have these reports in his possession. (*Barbee v. Warden, Maryland Penitentiary*, 331

F.2d 842, 846 (4th Cir. 1964). See generally, 34 A.L.R. 3d 16, and the cases cited therein.) To hold otherwise would be to encourage conduct evasive of the rules requiring disclosure of evidence favorable to defendant. Our courts have consistently condemned efforts to evade those rules. "[T]he State has no interest in interposing an obstacle to the disclosure of facts unless it is interested in convicting accused parties on testimony of untrustworthy persons. * * * Justice requires full and fair disclosure." *People v. Cole*, 30 Ill.2d 375, 381, 196 N.E.2d 691. See also *People v. Cagle*, 41 Ill.2d 528, 533, 244 N.E.2d 200, and *People v. Moses*, 11 Ill.2d 84, 89, 142 N.E.2d 1.

The State argues that the defense did not show due diligence, since they knew from Mitchell Thompson's testimony at trial the approximate area in which Wendell Robinson lived and that he had been at the apartment prior to the shooting, though he left sometime before.

We reject the State's argument. We know of no cases which hold that the prosecution's burden to turn over evidence is excused when the defense has sufficient time prior to cross-examination to go out and find the same evidence through its own investigation. The two cases cited by the State as support for this proposition are not on point. In *People v. Raymond*, 42 Ill.2d 564, 248 N.E.2d 663, no request had been made prior to trial and the defendant had personal knowledge of the specific report in question. The court held that disclosure of certain evidence is not required where, "* * * the accused is aware of its existence and specific contents." (42 Ill.2d at 568.) The same situation occurred in *People v. Richards*, 120 Ill.App.2d 313, 256 N.E.2d 475, also cited by the State, though there was also some question raised as to whether the evidence was favorable to the defendant.

Even if we accept *arguendo* the State's contention that a defendant is required to go out and secure this type of evidence on his own, there was nothing in the above witness' testimony that would have put the defense on notice that the evidence even existed. Mitchell Thompson did not state that Wendell Robinson gave a statement to the police. The testimony was simply that Robinson, along with several others, was present with Mitchell Thompson that evening and that he had left before the shooting. This is hardly sufficient to put the defense on notice that Robinson even had any personal knowledge of the shooting and surely not enough to indicate that he was aware of anything which could have been favorable to the defense.

The State further submits that even if the police reports were favorable to the defendant, the reports were produced at the hearing on the motion for new trial and Wendell Robinson testified at this hearing. It is argued, therefore, that since the trial court heard this new evidence,

that any prejudice to defendant was cured by this procedure. The State considers that at this hearing, "[t]he trial court re-opened the case * * *" and found the testimony of Wendell Robinson not to be credible.

We do not agree that the hearing on the motion for a new trial was sufficient to render the non-production of the evidence prior to trial such that there was no violation of defendant's right of due process. The defense had a right, as noted above, to have this evidence made available to it at the time of the request. It is not this court's purpose to speculate as to what use the defense could or would have put the evidence in question, or what additional evidence it may or may not have led to, had it been turned over prior to trial. The fact remains that this evidence was not available, as it should have been, to defendant when his defense at trial was being planned and prepared. The belated turnover of these reports after trial was sufficient to deprive defendant of their effective use and in no way cured the harm done by failing to turn them over to defendant initially. (See *People v. Green*, 133 Ill.App.2d 244, 272 N.E.2d 721, citing *People v. Cagle, supra*, at 533.) We agree with the reasoning of the Supreme Court in *Jencks v. United States*, 353 U.S. 657, 1 L.Ed.2d 1103, 77 S. Ct. 1007, where a petitioner was seeking to have certain reports of undercover agents turned over to him for possible use at trial. It was held that:

> "Because only the defense is adequately equipped to determine the effective use for the purpose of discrediting the Government's witness and thereby furthering the accused's defense, the defense must initially be entitled to see them to determine what use may be made of them. Justice requires no less." 353 U.S. at 668-669.

■■ We are of the opinion that the failure of the State to produce the statement of Wendell Robinson in response to defendant's request denied him his right to due process and a fair trial. The judgment of the Circuit Court of Cook County must then be reversed and defendant must be given a new trial in accordance with this opinion. It is therefore unnecessary to consider the other issues raised by defendant on this appeal.

The judgment of the Circuit Court of Cook County is reversed and the cause remanded for a new trial.

Reversed and remanded.

DIERINGER and JOHNSON, JJ., concur.