THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARIO DE-STEFANO, Defendant-Appellant.

(No. 59786;

First District (4th Division)—July 9, 1975.

*Rehearing denied August 25, 1975.*

Patrick A. Tuite and Dominic P. Gentile, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and John F. Brennan, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment entered in the Circuit Court of Cook County. The defendant, Mario DeStefano, along with Sam DeStefano and Anthony Spilotro, were indicted on August 30, 1972, for the 1963 murder of Leo Foreman. Prior to trial Sam DeStefano was killed. Following a jury trial, Anthony Spilotro was acquitted, but defendant Mario DeStefano was found guilty of murder and sentenced to a term of 20 to 40 years in the Illinois State Penitentiary.

The issues presented on appeal are: (1) whether the defendant was denied due process of law when the State, having evidence material to the question of defendant's guilt, failed to furnish such evidence to the defendant after a proper request was made; (2) whether the trial court properly admitted into evidence expert testimony regarding comparison of paint samples recovered in 1972 with paint chips found on the clothing of the victim in 1963; (3) whether the defendant was denied due process and effective confrontation of witnesses when the State failed to take any written statements from a State witness, who, in 1972, admitted his complicity in the murder of Leo Foreman after he had originally denied any participation in the murder in 1963; and (4) whether the verdicts convicting defendant Mario DeStefano and acquitting Anthony Spilotro were inconsistent.

Prior to trial, pursuant to Illinois Supreme Court Rule 412, the defendant filed a motion for pretrial discovery. Included in defendant's motion was a request for the State:

> "To disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor."

In the State's answer to defendant's motion there was no response to the above-mentioned request.

At trial, Charles Crimaldi, having been granted immunity from prosecution, testified on behalf of the State that he, Anthony Spilotro, Sam DeStefano and the defendant, Mario DeStefano, participated in the killing of Leo Foreman on November 14, 1963. Crimaldi testified he went to the home of Sam DeStefano in the afternoon of November 14, 1963. Crimaldi was taken into a bedroom where Sam DeStefano gave him a pair of gloves and a gun and told him of the plan to kill Leo Foreman. Crimaldi then drove to the home of the defendant, Mario DeStefano, in Leo Foreman's car. At the house, Crimaldi was met by Foreman and the defendant. After a few minutes, the defendant asked Foreman if he wanted to see the bomb shelter which defendant had built recently. The three men proceeded down some stairs to a room under the house. Crimaldi and the defendant then pushed Foreman into the shelter and fired their weapons at him. Crimaldi further testified that, after the weapons had been fired, he turned and saw Anthony Spilotro firing a gun. The defendant then stabbed the victim several times. The defendant and Spilotro then dragged the body up the stairs and put it in the trunk of the victim's car.

Mr. Claude Hazen, a microanalyst in the Chicago Police Crime Detection Laboratory, testified that in November, 1963, he vacuumed debris, including paint chips, from the clothing of Leo Foreman.

Gerald Lewandowski, a special agent with the Illinois Bureau of investigation, testified that on July 11, 1972, he went to the former residence of defendant in Westchester, Illinois, along with agents from the Chicago Crime Lab and an assistant State's attorney. The personnel from the crime lab removed samples of floor tile and paint from the bomb shelter in the house. These samples were compared with the debris vacuumed from the clothes of Leo Foreman in 1963. Sergeant Louis Vitullo, a micro-analyst in the Chicago Police Department, testified over objection of the defendant that the paint samples recovered from the clothing of Leo Foreman in 1963 were similar in color and pigment distribution, and that the property elements were present in similar amounts.

At the close of the State's case, the parties stipulated that the cause of Leo Foreman's death was due to gunshot wounds and stab wounds to the chest.

Defendant testified in his own behalf that on November 14, 1963, he owned a restaurant and was working there during the time that Charles Crimaldi stated the killing took place. Defendant's testimony was corroborated by an employee of the restaurant who testified that during the first two weeks of November, 1963, the defendant never left the place of business between the hours of 11 a.m. and 2 p.m. The defendant further testified he built a bomb shelter in his home 5 feet below ground level. The floor consisted of reinforced concrete which was not painted until 1967 when defendant's son painted it. Defendant repainted the floor in 1969 prior to selling his home. Sirio Paoletti and Roman Paoletti both testified they remodeled the defendant's bomb shelter in 1966, at which time there was no paint on the floor.

Anthony Spilotro presented testimony that on November 14, 1963, he, his brother and his brother's fiancee went shopping for furniture. Documentation regarding monies deposited in a bank that morning and checks written for furniture on that date, plus testimony of furniture salesman who recalled seeing Spilotro on the day in question, were introduced into evidence.

Subsequent to defendant's sentencing, the defendant learned for the first time that Leo Foreman had been severely beaten by Chicago police officers approximately 3 weeks before his death. As a result of the beating, Foreman had engaged the services of George Leighton, then a practicing attorney and now a justice of the Illinois Appellate Court. Defendant also learned that Foreman had met with Leighton and had given him a detailed statement regarding the beating.

On November 1, 1973, defendant filed a motion for a new trial based on this newly discovered evidence, and a post-trial hearing commenced.

Mr. Justice George Leighton, called as a witness by the defendant, testified that in October, 1963, he was engaged in the practice of law and was associated with a private law firm in Chicago. At the time, Leo Foreman sought his services regarding a claim of alleged police brutality. On October 24, 1963, he interviewed Leo Foreman and a companion, Sam Cavallo. The statements given by Foreman and Cavallo were recorded by Justice Leighton on a soundscriber and later transcribed. Foreman's statement contained an allegation that one of the policemen had told him, "I would love to have the pleasure of killing you." Justice Leighton also immediately arranged to have photographs taken of Foreman's bruises and lacerations, drafted and sent a notice to the City of Chicago that he intended to sue on behalf of Leo Foreman for the beating he received from the police, and prepared a file containing all the pertinent documents of the Foreman case. This file was stored in Leighton's law office.

Justice Leighton further testified that in 1972, prior to the indictment of defendant, an assistant State's attorney requested and was given the entire file regarding Leo Foreman's alleged claim of police brutality. This file was subpoenaed from Justice Leighton's former law firm by the grand jury in August, 1972. The State's attorney was thus in possession of the file at the time defendant filed his motion for pretrial discovery.

Three assistant State's attorneys involved in the investigation and prosecution of defendant testified at the post-trial hearing that they knew about the so-called "Leighton file" at the time of defendant's motion for pretrial discovery, but did not inform defendant of such evidence.

At the close of the post-trial hearing, the trial court denied defendant's motion for a new trial, but reinstated defendant's bail which had previously been revoked.

The defendant first contends he was denied due process of law when the State, having evidence material to the question of his guilt, failed to furnish him such evidence after a proper request was made. The State, however, contends the evidence was not material to the issue of defendant's guilt and therefore no violation occurred.

Illinois Supreme Court Rule 512(c) provides that upon request:

> "* * * the State shall disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor." (50 Ill.2d R. 412(c).)

The above rule follows the dictates of the United States Supreme Court in *Brady v. Maryland* (1962), 373 U.S. 83, wherein the court held:

> "[T]he suppression by the prosecution of evidence favorable to an

accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

As a result of the State's failure to respond to defense counsel's request for "any material or information * * * which tends to negate the guilt of the accused," the trial in this case commenced and concluded with defense counsel believing the State had no material or information which would have negated defendant's guilt, or which would have provided leads to other exculpatory evidence. After the conviction and sentencing of the defendant, defense counsel learned for the first time that in 1972, prior to the indictment of defendant for murder, an assistant State's attorney had spoken with Justice Leighton and had learned the above-recited facts concerning the alleged beating of Leo Foreman by police officers.

■■ The rule is well established in Illinois that the prosecution, upon request, must furnish to the defense statements containing favorable information or material in their possession or control. (*People v. Howze* (1972), 7 Ill.App.3d 60.) In *People v. Murdock*, (1968), 39 Ill.2d 553, the Illinois Supreme Court held the defendant was denied due process when the prosecution failed to disclose a sworn statement and police report which contained information favorable to the defense in that it contradicted the prosecution's theory of the case and supported defendant's theory that a third party had committed the crime. In *People v. Cagle* (1969), 41 Ill.2d 528, the supreme court held the defendant had been denied due process when the prosecution suppressed a police report favorable to the defendant which had been requested by defense counsel. Likewise in the case of *People v. Sumner* (1969), 43 Ill.2d 228, it was disclosed, after trial, that the prosecution at the time of the trial had eight investigative reports which had not been made available to defense counsel despite his request for copies of statements. The State, as here, contended the withholding of the materials was not a suppression of evidence and the failure to furnish them to the defendant was harmless error. The Illinois Supreme Court rejected the State's argument and found it was error to withhold the statements.

A review of the record in the case at bar reveals the defendant was denied due process by the State's failure to disclose the file compiled by Justice Leighton and made available to the State's attorney's office prior to the indictment of the defendant. The information withheld by the State was material to the issues and was favorable to the defense. The State in its brief to this court concedes on five separate occasions that the entire file should have been turned over to the defense. The State's

contention that the contents of the file were not material to the issue of defendant's guilt is without merit, because the information contained in the file may well have led to the discovery of information that Foreman had been killed by others.

■■ The failure to turn over this file was further aggravated by the conduct of the State in reading into evidence the autopsy report of Leo Foreman without informing defense counsel, the court or the jury that the bruises and lacerations on Foreman's body, observed and noted at the time of his autopsy, had been received some 3 weeks prior to his death, as depicted in the photographs contained in the secreted file. The Supreme Court of the United States, in *Miller v. Pate* (1967), 386 U.S. 1, condemned conduct similar to that displayed by the State in the case at bar. In *Miller*, the prosecution misrepresented that a pair of men's undershorts had blood on them although the prosecution knew at trial the shorts were stained with paint. In reversing defendant's conviction, the Supreme Court held:

> "More than 30 years ago this Court held that the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence. [Citation.] There has been no deviation from that established principle. [Citations.] There can be no retreat from that principle here." 386 U.S. 1, 7.

■■ We further deem it necessary to admonish the State for its conduct in attempting to conceal the identity of Justice George Leighton as a witness. On a supplemental list of witnesses filed by the State, the name "George Leighton, address unknown" appeared. At the time the supplemental list of witnesses was prepared, George Leighton was a Justice of the Illinois Appellate Court with chambers in the Chicago Civic Center, the same building in which the State's attorney also had offices. An assistant State's attorney had interviewed Justice Leighton regarding Leo Foreman's charge of police brutality some months prior to the filing of the supplemental list of witnesses. This conduct by the State can only be regarded as a deliberate attempt to withhold valuable information from the defendant and to mislead defendant into believing it was another person by the same name. Such conduct controverts the basic tenets of due process of law. The Supreme Court of the United States, in *Berger v. United States* (1934), 295 U.S. 78, 88, succinctly held:

> "[A government prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.

As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

The aforesaid statement in *Berger* was quoted by the Supreme Court in *Singer v. United States* (1964), 380 U.S. 24. We believe the above quoted language is applicable to the present case, where the State's attorney's office so overstepped the bounds of propriety and fairness as to prevent justice from being done and denied defendant a fair trial.

The defendant next contends the trial court erred in admitting into evidence expert testimony regarding paint samples recovered in 1972 without foundation being laid that the condition of the premises was the same as in November, 1963.

At the trial, expert testimony was given, over the objection of the defendant, comparing paint chips found on the victim's clothes in 1963 with paint samples recovered from the floor of the bomb shelter in 1972. No evidence was introduced by the State showing that the floor of the shelter was painted in 1963 or that it remained in the same condition from 1963 to 1972.

In fact, several defense witnesses gave uncontradicted testimony that the floor of the bomb shelter had been flooded with water and not painted at all until 1967. The general contractor who remodeled the bomb shelter in September, 1966, testified he noticed a great deal of water in the shelter, and that the floor was not painted.

■■ It is well settled that expert testimony will not be admitted into evidence where no proper foundation is laid for its admission. (*People v. Parr* (1971), 133 Ill.App.2d 82.) In *Jines v. Greyhound Corp.* (1965), 33 Ill.2d 83, the supreme court held the testimony of an expert regarding his examination of a brakedrum 2 months after an accident was incompetent because of the failure to show the condition of the brakedrum when examined was the same as it was prior to the accident. In the present case, where the State sought to prove the prior condition by inference arising from the 1972 analysis, we feel that it was improper to allow the jury to speculate without some proof showing the painted condition of the floor in 1963 and in the face of uncontroverted proof that the floor was not painted at that time. Without proper foundation being laid by the State, the trial court erred in allowing the testimony of the expert witness.

Defendant further contends he was denied due process of law when

the State failed to make any memoranda or memorialization of Charles Crimaldi's statements.

■■■ The State's primary witness in the present case was Charles Crimaldi, an alleged accomplice to the murder of Leo Foreman. Crimaldi was granted immunity from prosecution by the State. He had a prior criminal record, having been previously convicted of armed robbery and burglary. From 1963 until 1972, he denied participating in the murder of Leo Foreman. On cross-examination, Crimaldi admitted he confessed to the murder in order to receive immunity and escape punishment. Mr. Robert Novelle, chief of the Criminal Division of the Cook County State's attorney's office in 1972, testified at the post-trial hearing that Charles Crimaldi was interviewed at least five times prior to his grand jury testimony by agents of the Illinois Bureau of Investigation and by representatives of the State's attorney's office. Mr. Novelle admitted he ordered the agents of the I.B.I. and the assistant State's attorneys to refrain from making any memoranda or memorialization of the statements made by Crimaldi. Such order was given despite the long standing rule in Illinois that the testimony of an accomplice witness must be examined with utmost caution. (*People v. Mostafa* (1971), 5 Ill.App. 3d 158.) Moreover, the duty of the prosecution to preserve evidence was well formulated in the case of *United States v. Bryant* (D.C. Cir. 1971), 439 F.2d 642, 648, wherein the court stated:

"The purpose of the duty is not simply to correct an imbalance of advantage, whereby the prosecution may surprise the defense at trial with new evidence; rather, it is also to make of the trial a search for truth informed by all relevant material, much of which, because of imbalance in investigative resources, will be exclusively in the hands of the Government."

It is obvious in the instant case that Mr. Novelle's order not to take written statements or otherwise memorialize anything Crimaldi told the State was for the purpose of defeating the defendant's right of discovery under Illinois Supreme Court Rule 412(c) and the effective use of such discovery at trial to test the credibility of the witness in accordance with prescribed standards. (*People v. Mostafa.*) Under such special circumstances as here, allowing investigative and prosecutorial agents to repeatedly interview the witness and not memorialize the statements, defeats the defendant's right to discovery and denied him due process and equal protection of law.

Defendant finally contends the verdicts convicting him and acquitting Anthony Spilotro were inconsistent. In view of the fact that we must grant a new trial on other matters, we need not discuss the inconsistent verdicts.

944

For the reasons stated herein, we conclude the defendant did not receive a fair trial. Accordingly, the judgment of the Circuit Court of Cook County is reversed and remanded for new trial.

Reversed and remanded for new trial.

JOHNSON and ADESKO, JJ., concur.