THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GARY DANIEL PARTON, Defendant-Appellant.

Fourth District   Nos. 13077-78 cons.

Opinion filed August 12, 1976.

GREEN, J., concurring in part and dissenting in part.

Richard J. Wilson and Barbara A. Chasnoff, both of State Appellate Defender's Office, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur (Jon C. Baxter, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

After trial by jury in the circuit court of Macon County, defendant, Gary Daniel Parton, was convicted of two offenses of forgery arising from separate cases joined at trial and now on appeal. Defendant was sentenced to two concurrent terms of 2 to 6 years' imprisonment. Both offenses concern endorsements on checks payable to Martha C. Cortsen. In one case, the check was a monthly social security benefit payment in the sum of $155.60. In the other case, the check was a dividend payment by Larwin Realty and Mortgage Trust in the sum of $94.50. On appeal, defendant complains that the evidence was insufficient to prove his guilt beyond a reasonable doubt and that he was prejudiced by the failure of the State to give required discovery.

The evidence for the prosecution showed that on May 5, 1971, while Martha C. Cortsen was hospitalized, her mailbox at her residence in Decatur was forced open. At the time, she was expecting the checks in question but never received them. On May 8, 1971, these checks, each purporting to bear the endorsement of Ms. Cortsen, were deposited by the Harper Oil Company in a Decatur bank. Harold Skelton, manager for the Harper Oil Company station that made the deposit, produced a deposit slip showing a deposit by his firm of the two checks. The slip was dated May 5, 1971, a Friday, and bore a stamp indicating receipt by the bank on the following Monday, May 8, 1971. Skelton testified without objection that his brother James (Adrian) Skelton prepared the deposit slip and made the deposit. He also stated that James Skelton made deposits on Saturday and that if a deposit was made after noon on Saturday, it would be made in a night depository vault and would not be received by the bank until the following Monday. According to Harold Skelton, all employees were authorized to receive checks but only from a listed group of people. Checks were placed in a drawer in the safe at the service station. Only Harold and his brother James had keys to this drawer. The deposits for Friday night, May 5, 1971, would have been made on May 6 by James rather than Harold.

The evidence also showed that defendant lived two blocks from Ms. Cortsen. He had been employed at the Harper service station involved here, and he worked the evening shift on Friday, May 5, but did not report for work on May 6 or thereafter. Defendant was later questioned separately by Harold Skelton, a Decatur police department detective, and a Federal agent. He told all of them that he had cashed the Larwin check for a male and female customer after receiving permission from a fellow employee to do so. He denied any knowledge of the social security check. A Secret Service handwriting expert testified that after comparing the endorsements on the checks with a furnished exemplar of defendant's

handwriting, he was of the opinion that the endorsements on the checks were "very probably" written by defendant. The expert was unable to make a positive identification because of the differences in the letter "m" on the endorsement and the exemplar.

■■ The defendant introduced no evidence. In arguing that the evidence was insufficient to prove his guilt beyond a reasonable doubt, defendant compares the handwriting expert's inability to make a positive identification that the endorsements were in defendant's hand with the inability of occurrence witnesses to positively identify an accused as the person they saw commit a crime. He cites *People v. McGee* (1961), 21 Ill. 2d 440, 173 N.E.2d 434, in which uncertain identification by two victims that defendant was the person they saw breaking into their house was held to be insufficient to support a guilty verdict where there was no corroboration and where defendant presented uncontradicted alibi evidence that was not improbable. Here, on the other hand, the opinion evidence on the handwriting, although not absolute, was stronger than the identification testimony in *McGee*. This evidence was corroborated by testimony that defendant lived near the place where the mailbox was broken open, worked at the service station where the checks were received, and did not return to work after the day when the checks were likely placed with the funds of the business establishment. Under this evidence, the jury was justified in determining that the defendant's guilt had been proved beyond a reasonable doubt.

The discovery problems presented by this case are more complicated. Prior to trial, defendant made a motion for discovery which included a request for the State to produce all documents which it intended to use at trial and any material or information in its possession which tended to negate defendant's guilt. The State gave some information to defendant and also notified defendant in writing that any other "material and information requested" would be available for "inspection, testing, copying, photographing or examining" at the prosecutor's office at a mutually agreeable time. The State did not give the defendant any list of the exhibits it intended to introduce and did not give any indication to defendant that James (Adrian) Skelton was an individual having information that might tend to negate defendant's guilt.

The day after Harold Skelton's testimony, and prior to the State resting, defendant made a motion to dismiss the case, or in the alternative, to declare a mistrial as a sanction against the State because the deposit slip had not been produced for defendant prior to trial. Defense counsel stated that he was taken by surprise when he found that the deposit slip was not shown to have been received by the bank until May 8 although the slip was dated May 5. Defense counsel contended that because he did not know of the difference between the dates prior to seeing the exhibit

during the cross-examination of Harold Skelton, he was not able to prepare a cross-examination to maximize the favorable effect to the defendant of the difference in the dates. The State argued that discovery of the deposit slip was given by the offer of the State to exhibit all requested documents to defendant at the prosecutor's office. The trial judge stated that while the State's "open file" offer was not compliance with the discovery request as required by Supreme Court Rule 412 (Ill. Rev. Stat. 1973, ch. 110A, par. 412), there had not been "any damage done" and denied the motion. Just before resting, the State offered the deposit slip into evidence. Defendant objected on the grounds set forth in his motion to dismiss. The court overruled the objection and admitted the exhibit. In defendant's motion for a new trial, he alleged that the failure of the State to produce the deposit slip prior to trial had taken him by surprise and prevented him from making "further investigation with regard to this case relative to the handling of said checks which became a material issue in said cause" thus violating his "constitutional rights to a fair and impartial trial by jury."

Upon appeal, defendant expands his theory of error to contend that the failure of the State to inform him of the existence of the deposit slip deprived him of information favorable to his defense in violation of the rule of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194. There, the United States Supreme Court held that the prosecution must, upon demand, inform the accused of information and material favorable to his defense or in mitigation of his punishment. In *Moore v. Illinois* (1972), 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562, the suppression of evidence that would impeach an eyewitness' ability to identify the accused was held not to be material evidence favorable to the defendant within the *Brady* doctrine. On the other hand, in *People v. Nichols* (1976), 63 Ill. 2d 443, 349 N.E.2d 40, suppression by the State of a shoe found outside the window of an apartment likely entered by one of the perpetrators of rape, armed robbery, and burglary was held to require the award of a new trial. The defendants there presented alibi evidence and contended that they had been misidentified. The supreme court ruled that the shoe was evidence favorable to the defendants' contention that someone else might have committed the offenses.

Supreme Court Rule 412 provides that upon demand of the accused, the State shall, prior to trial, disclose any document the State intends to use at trial (Rule 412(a)(iv)) and, subject to protective orders, "any material or information within its possession or control which tends to negate the guilt of the accused * * * ." (Rule 412(c).) The rule further provides that the State may perform its obligation by:

> "(i) notifying defense counsel that material and information, described in general terms, may be inspected, obtained, tested,

copied, or photographed, during specified reasonable times." (Ill. Rev. Stat. 1973, ch. 110A, par. 412(e)(i).)

The State argues that it complied with Rule 412(e)(i) by its "open file" offer. The rule, however, provides that the State must "describe in general terms" the documents to be inspected, and the State's offer did not do this. We agree with the trial court that the offer was not compliance with the discovery required. Supreme Court Rule 412 clearly provides full discovery to the end that the truth may be ascertained. We have no intention of eroding the rule through the niceties of construction.

Supreme Court Rule 415(g) provides for sanctions that may be imposed on a party for failure to furnish required discovery. The rule indicates that discretion is vested in the trial court. If the problem here was that the State had merely failed to give discovery of a document later taking defense counsel by surprise when it was presented at trial, the trial judge's denial of defendant's motion and the admission of the document into evidence would have been within his discretion. Here, however, defendant claims that by withholding this document, the State withheld "material or information * * * which tends to negate the guilt of the accused" which was required to be produced prior to trial pursuant to his demand under 412(c). That portion of the rule was enacted to enable an accused to receive before trial the information to which that person is entitled under the rule of *Brady v. Maryland.* (See Committee Comments, Ill. Ann. Stat., ch. 110A, par. 412(c), at 681 (Smith-Hurd 1976).) If the deposit slip contained information negating defendant's guilt, that information was obtained by defendant at trial rather than prior to trial. He was thus thwarted in his ability to fully use that information to develop his defense.

■■ Other than the testimony of the handwriting expert, proof of defendant's guilt as to either offense consists of the inferences arising from the circumstances of defendant's living near the rifled mailbox, his working at the business firm where the checks were deposited at a time the checks were likely received, and his failure to appear for work on May 6 and thereafter. This evidence was circumstantial. The deposit slips revealed for the first time that James Skelton likely had custody of the checks from May 5, 1971, until the checks were deposited at the bank no later than May 8. From cross-examination concerning the document, defense counsel also learned for the first time that James Skelton had access to the check drawer of the safe during the time that the check was likely placed there. There is no evidence to indicate that the defendant observed the two customers endorse the Larwin check, nor is there any evidence of an admission by the defendant that he endorsed that check. Just as the jury might consider that because defendant worked at the Harper Oil Company station where the checks were likely received, he

might have forged the checks and cashed them out of the station's cash drawer, the jury might also consider that because James Skelton had access to the check drawer and was in charge of making out the deposit slip, he had a like opportunity. The failure to give defendant the required pretrial discovery worked substantial prejudice to him and entitled him to a new trial.

The case involving the Larwin check is more difficult because of the defendant's out-of-court admission that he cashed that check for a customer while at the service station. The materiality of the withheld evidence is in greater question as, if the defendant cashed the Larwin check, a defense based on James Skelton's access to the check drawer is unlikely proof that Skelton could have committed the forgery involved. However, we note that it is not the function of an appellate court to speculate to what use a defendant and his counsel may put material evidence withheld them in violation of Rule 412. As was stated in *People v. Dixon* (1974), 19 Ill. App. 3d 683, 312 N.E.2d 390:

> "It is not this court's purpose to speculate as to what use the defense could or would have put the evidence in question, or what additional evidence it may or may not have led to, had it been turned over prior to trial. The fact remains that this evidence was not available as it should have been, to defendant when his defense at trial was being planned and prepared. The belated turnover of these reports after trial was sufficient to deprive defendant of their effective use and in no way cured the harm done by failing to turn them over to defendant initially." (19 Ill. App. 3d 683, 688, 312 N.E.2d 390, 394.)

See also *People v. Sumner* (1969), 43 Ill. 2d 228, 252 N.E.2d 534.

It is argued that the defendant, by his failure to introduce any evidence to negate his guilt, has waived any error present in the failure of the State to comply with the rules of discovery. Not every defense is predicated on the affirmative presentation of evidence especially where, as here, the evidence against the defendant is entirely circumstantial. Then, too, we are not permitted the luxury of knowing what further evidence the withheld items would have produced after investigation by defense counsel. The error involved in withholding evidence from discovery is not dependent on an affirmative showing by the defendant that he was prejudiced in fact. *People v. Nichols* (1976), 63 Ill. 2d 443, 349 N.E.2d 40.

The fact that the defendant admitted cashing the Larwin check does not excuse the failure to comply with Rule 412 or render it harmless error. If this court cannot know the purposes to which the defendant and his counsel would put the undisclosed evidence, it cannot be said such error is harmless. (See *People v. Nichols* (1975), 27 Ill. App. 3d 372, 327 N.E.2d 186; *People v. DeStefano* (1975), 30 Ill. App. 3d 935, 332 N.E.2d 626.)

Even if the defendant had admitted cashing the Larwin check, it cannot be argued that upon this set of facts the deposit slip, which by its very nature incorporated the questionable check, may not have been material or constituted information that tended to negate guilt. The supreme court has adopted a rule in this State that discovery should be made to the end that justice can be served. If we begin to nick away at this principle by encouraging the type of nondisclosure as was made here through the finding of harmless error, we shall undoubtedly reach a point where no attorney will know what may or should be discoverable.

Accordingly, the judgments of conviction and sentences are reversed, and the cases are remanded to the circuit court of Macon County for a new trial.

Reversed and remanded.

REARDON, J., concurs.

Mr. JUSTICE GREEN, concurring in part and dissenting in part:

The majority rules that defendant is entitled to a new trial in both cases because of the State's failure to furnish discovery. I find the evidence withheld to be shown to be favorable to the defendant in the case involving the social security check and agree that a new trial should be granted there. I do not find the withheld evidence to be shown to be favorable to defendant in the case involving the Larwin check and disagree with the award of a new trial there.

The majority conclude that to affirm in the Larwin check case would start a process which would eventually "nick away" at Supreme Court Rule 412(c) to the point "where no attorney will know what may or should be discoverable". I respectfully submit that, to the contrary, the action of the majority in reversing does just that. Favorable use by the defendant of the withheld evidence in this case is very speculative. An equally speculative theory can be concocted to make favorable use of a wide variety of evidence. Prosecutors will have to be careful to see that their imagination is equal to that of defense counsel. If they conclude that the only safe policy is to give discovery of all material evidence, they may find that burdensome because, as we have ruled, an "open file" policy is insufficient.

The majority recognize that favorable use by defendant of the information withheld is conjectural in the Larwin case. They counter with the quotation from *Dixon* to the effect that we should not concern ourselves with the use to which the evidence is to be put. The quotation would appear on its face to support their position, but the context in which it was made weakens that interpretation. In a murder prosecution,

the State had withheld the name, and a statement, of an eyewitness. The statement substantially impeached the testimony of the State's sole witness. On appeal the court stated that the withheld evidence was clearly favorable to the defense. The State had argued that even if this was so, disclosure given at the time of hearing on a post-trial motion cured any error. Later in the opinion the court made the quoted statement in answer to the State's claim that error was cured. Subsequently, in *Nichols* the supreme court stated, "For there to have been a violation" of the *Brady v. Maryland* rule "it must be shown * * * that the evidence was favorable to the defendant." 63 Ill. 2d 443, 446, 349 N.E.2d 40, 42-43.

The majority apparently contend that the disclosure requirements under Rule 412(c) are similar to those for statements of witnesses under *People v. Wolff* (1960), 19 Ill. 2d 318, 167 N.E.2d 197. Since that decision a prosecutor is required to disclose to the accused all such statements if they are material and not privileged. Although the purpose of disclosing the statements is for use in impeaching prosecution witnesses, the statements need not be impeaching to require disclosure. Accordingly, in ruling on questions of disclosure the court does not concern itself with whether the statement impeaches. The defense is given the opportunity to make its own determination as to whether to attempt to use the statement for that purpose. By the express terms of Rule 412(c) and the clear language of *Nichols*, favorability to the accused is a requirement of discoverability of the type of information in issue here. Evidence is favorable only if there is a reasonable likelihood of its beneficial use, and the court has the responsibility of determining whether such a showing has been made. In *Brady v. Maryland, Nichols,* and *Dixon* the withheld matter was found to be clearly favorable to the accused.

In the instant case involving the Larwin check, I consider any favorable use of the withheld information to be even more unlikely than do the majority. The undisputed testimony of three witnesses was that defendant had said that he cashed the check for a customer and placed it with the firm's receipts. The statement would clearly imply that the check had been endorsed. Even if the trier of fact gave credence to the theory that the check was unendorsed, it would also have to give credence to a theory that James Skelton, having later access to the check, placed a forged endorsement on the check himself. If information as to Skelton's existence was required to be disclosed under Rule 412(c) as to this case, then the State was also required to disclose the names of all known persons at the depositing bank who also had access to the check and could have placed a forged endorsement on it. Under the ruling here it would seem rather difficult for a prosecutor in this case to determine what information was required to be presented under Rule 412(c). It is worthy of note that not until appeal was taken did defense counsel conceive of

the theory that the rule had been violated. The trial judge had no opportunity to pass on such a contention.

The majority does not directly say that the evidence withheld in the Larwin case is shown to be favorable to the accused. In view of the extremely conjectural theory upon which it might bear, I conclude that it has not been so shown, and I accordingly dissent from the ruling reversing the sentence and conviction in that case, No. 13078. I concur in the reversal and remandment in No. 13077.