THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROSA MARIE BENNETT, Defendant-Appellant.

First District (5th Division)   No. 78-99

Opinion filed March 7, 1980.

Ralph Ruebner and Susan Bandes, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and Ellen M. Flaum, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was convicted of voluntary manslaughter (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(b)), and sentenced to 1½ years to 4½ years in the penitentiary. On appeal, she raises the following issues: (1) that the State's failure to produce her torn sweatshirt violated her right to due process of law and Supreme Court Rule 412; (2) that the trial court erred in admitting testimony regarding the surgery performed on deceased prior to death, along with a photograph of deceased revealing surgical incisions; (3) that the trial court erred when it offered no additional instruction or clarification in response to juror's questions during their deliberations; (4) that she was denied the effective assistance of counsel; and (5) that the State did not prove beyond a reasonable doubt that she was guilty of voluntary manslaughter.

The following pertinent facts were adduced at· trial.

*For the State*

*Anton Majcen, Chicago Police Officer*

He and his partner, Robert Andler, responded to a call at about 5:30 a.m., April 16, 1975, regarding a man shot at 2350 South State, Chicago. Defendant answered the door at apartment 402 of that address, and informed him that she had just shot her husband. She indicated that the gun was on a dresser in the bedroom. He saw the deceased lying on the floor with blood coming from his head. As his partner attended to the victim, who was alive at that time, he recovered the gun. On the way to the police station defendant told him that she and deceased had a quarrel beginning at 11:30 p.m. on the previous night, during which she was struck by deceased several times, and that about 5:15 on the morning of April 16, during the course of an argument, deceased raised a bottle in his hand and attempted to strike her. She picked up a gun and fired four shots at deceased.

Later, at the police station, he heard defendant repeat the story to John Ferguson, a detective from Area One Homicide. Defendant said she was struck in the back, head, chest and arms, but declined any medical attention. He noticed no cuts or bruises on her face, nor tears in her clothing.

On cross-examination, he stated that defendant wore a turtleneck sweater, a jacket and a scarf on her head when she was arrested. He did not examine her for bruises under the clothing.

*Robert Andler, Chicago Police Officer*

During his and his partner's investigation, he was with defendant for about one hour that evening, but he noticed no cuts or bruises on her body.

*John Ferguson, Chicago Police Officer*

At about 7 a.m. on April 16, 1975, he took an oral statement from defendant. She told him that deceased started an argument with her at about 9 p.m. at their home on the previous evening, that they quarreled about deceased's excessive drinking and about what she had prepared for dinner, and that deceased struck her in the face. She also said that later that evening, deceased insisted that she go out with him. As she dressed, deceased approached her with a bottle in his hand. She felt that he was going to strike her with the bottle, so she fired the gun at him five times, though it discharged only four shots.

Defendant also gave a written statement. In it she stated that she shot deceased because, "He had been beating on me since 12:00 midnight for no reason at all." When asked about injuries arising from the beating, defendant stated, "I am four and one half months pregnant. I have an appointment at Michael Reese Clinic, pre-natal clinic today at 8:30 a.m. I

do have a headache." He noticed nothing unusual about her appearance, with the exception of a small swelling on a portion of her forehead. Her clothes were not torn or dismantled.

On cross-examination, he admitted that defendant complained of headache pains while at the police station.

*Irwin Solganick, Assistant State's Attorney*

His testimony substantially corroborated the testimony of Officer Ferguson. He took an oral statement from defendant at about 8:40 a.m., the morning of April 16, 1975, and later at about 2:30 p.m., took a written statement from defendant in the presence of a court reporter. Defendant's second statement differed from the first only in her estimation of the time intervals between the fights she had with deceased. While the first statement indicated that the fights were separated by periods of one-half hour or longer, the second reflected that the time intervals were no longer than five or 10 minutes. He noticed no bruises, swelling or blood on defendant. In addition, the clothes that defendant wore during the interview did not appear to be ripped or stretched.

*Dr. Yuksel Konacki, physician and forensic pathologist*

He performed the autopsy of deceased on April 17, 1975, and found the cause of death to be bullet wounds to the face and chest of deceased. People's exhibit No. 1 accurately reflected the location of the wounds.

The parties entered into a stipulation as to the testimony of Dr. Lisle Burke, who treated the deceased before he died on April 16, 1975. He noted four wounds on the deceased: one on the face, one on the left chest, one on the left ankle and one on the left back. Deceased was prepared for surgery and received various injections of fluid. Before surgery commenced, it became necessary to surgically open the chest of deceased since his heart stopped beating. An internal examination of deceased revealed a large blood clot in his aorta and a hole in his pulmonary artery. Deceased weighed 221 pounds.

*For the Defendant*

*Defendant Rosa Marie Bennett, on her own behalf*

As she was preparing herself some hot dogs in her home at about 11:45 p.m., April 15, 1975, deceased arrived, and an argument shortly ensued. Over the next few hours, deceased repeatedly struck her on her face, arms and body, knocking her into the freezer and bathroom mirror. Deceased gave her no reasons for his behavior. Later that evening, deceased, who had been drinking vodka, refused her request to lower the volume on the record player. Instead, he punched her several times, and hit her with books and a cologne bottle.

At about 3:30 a.m., deceased demanded that she get dressed to go out. She protested, but began to put her clothing on. A short time later

deceased said, "You ain't ready yet, bitch?" She was in the hallway outside the bedroom at this time. Deceased, standing between the kitchen and living room, a distance she thought to be eight to 10 feet away, attempted to throw a bottle at her. She grabbed a gun from the bedroom dresser and started firing it at deceased. She had never fired a gun before. She then called the police, told them what happened, and asked one of the neighbors to go look at deceased. After the police took her statement at the police station, she was taken to the hospital for X rays and examination, but received no medication.

On December 12, 1974, about four months prior to the shooting, defendant had another altercation with deceased at their home. Deceased struck her and she fled, called the police, and later received medical attention at Mercy Hospital. She had another quarrel with deceased on May 11, 1974, about one year prior to the shooting incident at her father-in-law's home. Deceased struck her until restrained by his father and brother. She received treatment for this injury at Michael Reese Hospital.

On cross-examination, she stated that she weighed over 200 pounds on April 15, 1975. She admitted that between 3:30 a.m. when deceased told her to get dressed, and 5:15 a.m. when the shooting occurred, she had no physical contact with deceased. Her mother gave Officer Ferguson defendant's bloodstained sweatshirt that had been torn by deceased during their arguments. She also stated that the bottle that deceased tried to throw at her was a pint bottle. When she indicated at trial the distance she was from deceased at the time of the shooting, the parties agreed that it was about 25 feet. Her pregnancy terminated in miscarriage while she was at Cook County jail.

*Kathleen Kaiser*

She lived in the apartment next door to defendant on April 15, 1975. She heard defendant crying that night around midnight, and heard deceased say to defendant, "Yes, you haven't been going to school. You think I am a damn fool." She also heard deceased threaten to kill defendant. At about 5 a.m., while checking on her children, she heard defendant tell deceased to leave her alone. She then went to bed. At about 5:45 a.m. defendant came to her door. Defendant told her that she had just shot deceased.

On December 10, 1973, she was at the apartment of defendant's sister, about a year and one half prior to the shooting. She saw deceased strike defendant in the face.

On cross-examination, she stated that she heard no music playing from defendant's apartment on the night of the shooting, although sound carried very well through the walls of defendant's adjacent apartment.

*Cora Lyke*

She is defendant's sister. On Thanksgiving Day, 1973, she, defendant

and deceased were at the home of her eldest sister. She saw deceased beating defendant and intervened to stop him.

OPINION

Defendant contends that the State's failure to produce her torn sweatshirt, which would corroborate her claim of self-defense, violated her right to due process of law and Supreme Court Rule 412(a)(v) and (c) (Ill. Rev. Stat. 1975, ch. 110A, par. 412(a)(v) and (c)). We agree.

Supreme Court Rule 412(c) provides:

"[T]he State shall disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment thereto." Ill. Rev. Stat. 1975, ch. 110A, par. 412(c).

Supreme Court Rule 412(a)(v) provides:

"[T]he State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control: * * * (v) Any * * * tangible objects which the prosecuting attorney intends to use in the hearing or trial or which were obtained from or belong to the accused." Ill. Rev. Stat. 1975, ch. 110A, par. 412(a)(v).

Prior to trial, trial counsel for defendant filed motions to inspect physical evidence in the possession of law enforcement officials and for evidence favorable to defendant. The State's answer to discovery listed various items, none of which referred to defendant's clothing. Trial counsel, in his affidavit filed with the amended motion for new trial, stated that defendant told him the police had taken her sweatshirt, which was torn by deceased on the night of the shooting. When counsel requested the production of the sweatshirt, an unidentified Assistant State's Attorney said that the State had no such clothing. Counsel found no indication of the sweatshirt in the materials tendered by the State pursuant to its compliance with discovery. Appellate counsel, however, stated in her affidavit that she examined the court file in preparation for her amended motion for a new trial, and found a police inventory slip dated April 16, 1975, which listed "one black sleeve ladies sweatshirt torn at both sleeves." Based upon these facts, we find that the State had a duty to produce the sweatshirt for defense counsel's inspection.

In *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 215, 83 S. Ct. 1194, the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The *Brady*

rule was further developed in *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392. In *Agurs,* the Supreme Court found that the test for determining whether a new trial is warranted by the State's failure to disclose information to the accused turns on the nature of the request and the materiality of the suppressed information or object. If a specific request is made by defendant, "the failure [by the State] to make any response is seldom, if ever, excusable." (*Agurs,* 427 U.S. 97, 106, 49 L. Ed. 2d 342, 351, 96 S. Ct. 2392, 2399.) However, if a general request is made, the State has no duty to routinely turn over everything in its files. (*Agurs.*) The standard of materiality for nondisclosed items pursuant to a general request is as follows:

> "It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *Agurs,* 427 U.S. 97, 112-13, 49 L. Ed. 2d 342, 354-55, 96 S. Ct. 2392, 2402.

In the instant case, defendant made a specific request for the torn sweatshirt. Defendant requested to inspect all physical evidence in the possession of law enforcement officials and all evidence favorable to the accused. A request for "any material or information in the State's possession which tends to negate defendant's guilt," is specific in nature, even though it does not designate the particular item requested. (*People v. Parton* (1976), 40 Ill. App. 3d 753, 354 N.E.2d 12.) More importantly, according to trial counsel's affidavit, he specifically requested from an Assistant State's Attorney the production of defendant's torn sweatshirt. Such a request gave the prosecutor notice of exactly what the defense desired.

The sweatshirt's materiality in the present case is beyond question. The State's case rested upon the lack of physical evidence to corroborate defendant's testimony. Several State witnesses testified that defendant's clothing was not torn shortly after the shooting incident, and that defendant had no visible bruises or cuts on her body. Accordingly, the jury found defendant guilty of voluntary manslaughter under the unreasonable belief of self-defense section of that statute. (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(b).) Defendant's bloodstained sweatshirt, which she testified was torn by deceased and later taken by the police on the day of the shooting, could have been introduced to show the intensity of the

altercation and the reasonableness of defendant's actions under the circumstances. Defendant was the sole eyewitness to testify for the defense, and the sweatshirt could have provided corroboration of her testimony. Since we find that a specific request was made by defendant for material evidence, the State's failure to produce is reversible error.

■■ We are not convinced by the State's argument that defendant's sweatshirt was not suppressed, since the State was unaware that it was in its possession, and since it made all of its materials available for copying and inspection. Such an "open file" offer by the State is not compliance with a discovery request as required by Supreme Court Rule 412. (*People v. Parton* (1976), 40 Ill. App. 3d 753, 354 N.E.2d 12.) Moreover, there is no exception to the disclosure rule for innocent or inadvertent suppression of favorable evidence. (*People v. Loftis* (1977), 55 Ill. App. 3d 456, 370 N.E.2d 1160.) Defense counsel's awareness of the sweatshirt and failure to procure its production by court order cannot even be said to justify the suppression of the clothing by the State. *People v. Nichols* (1976), 63 Ill. 2d 443, 349 N.E.2d 40; *People v. Hutchinson* (1977), 55 Ill. App. 3d 716, 371 N.E.2d 201.

Defendant also contends that the trial court erred in admitting testimony regarding the surgery performed on deceased prior to his death, along with a photograph of deceased revealing surgical incisions.

■■ As to the medical testimony, we note that this was entered into evidence by way of stipulation between the State and trial counsel for defendant. Therefore, defendant is estopped from taking advantage of his own actions at trial and urging this as grounds for reversal. *People v. Logan* (1977), 50 Ill. App. 3d 460, 365 N.E.2d 304.

■■ The admission of photographs at trial rests within the sound discretion of the trial court, and the exercise of that discretion will not be interfered with unless there has been an abuse thereof to the prejudice of the accused. (*People v. Puckett* (1972), 6 Ill. App. 3d 206, 285 N.E.2d 258.) A photograph may properly be admitted notwithstanding the fact that it shows a surgical incision which assertedly renders it inflammatory. (*People v. Smith* (1974), 20 Ill. App. 3d 756, 314 N.E.2d 543.) In addition, photographs of a homicide victim's body introduced to show cause of death and identity of the victim are properly admitted, even though there is oral testimony on the same subject or defendant offers to stipulate as to the matters shown by the photographs. (*People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6.) In the instant case, the trial judge did not abuse his discretion in admitting the photographs of deceased, and the defendant was not prejudiced in this regard.

We find it unnecessary to consider defendant's other contentions, since they are unlikely to appear on remand. Accordingly, the judgment

of the circuit court is reversed, and this case is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

SULLIVAN, P. J., and MEJDA, J., concur.